RUTH MARIE RAUPP, Plaintiff-Appellee, *v.* KENNETH ALGER RAUPP, Defendant-Appellant

NO. 8416

(FC-D NO. 9490)

JANUARY 12, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

In this divorce case, defendant Kenneth Alger Raupp (Husband) appeals the division of property. The issue is whether the

family court judge manifestly abused his wide discretion in such matters. *Ahlo v. Ahlo,* 1 Haw. App. 324, 619 P.2d 112 (1980). Subject to some modifications, we affirm.

The parties were married on January 20, 1970 (DOM). They moved to Hawaii in 1976. Plaintiff Ruth Marie Raupp (Wife) sued for a divorce on March 11, 1980. At that time, Husband was age 57 and Wife was age 50. A decree of divorce was filed on November 13, 1980. The order dividing property was filed on April 6, 1981.[1]

At the DOM, Wife owned the following:

A. REAL ESTATE

1. Garrison Street, Dearborn, Michigan: There is no evidence in the record of its value at the DOM. Wife sold it on January 15, 1975 for a gross of $42,000.00[2] and a net of $39,612.72 cash. The proceeds were deposited into a joint savings account.

2. Edison Street, Dearborn, Michigan: Wife and her husband by a former marriage purchased this property in 1960 for $21,000.00. There is no evidence in the record of its value at the DOM. It was the parties' marital residence until they moved to Hawaii. Wife sold it on August 16, 1976 for a gross of $44,000.00 cash.

3. Toledo, Ohio: There is no evidence in the record of its value at the DOM. Wife sold it on October 23, 1975 for a gross of $30,000.00 and a net of $26,392.98, paid by $4,892.98 in cash and a $21,500.00 secured promissory note payable in monthly installments of $200.47. There is no evidence in the record of the note's interest rate.

4. St. Clair County, Michigan: Wife purchased this property on August 30, 1968 for $19,500.00, one-third of which came from her daughter's savings. There is no evidence in the record of its value at the DOM. Wife sold it on June 28, 1979 for a gross of $42,000.00. She netted a $37,000.00 promissory note payable

---

[1] This order is an appealable order. *Cleveland v. Cleveland,* 57 Haw. 519, 559 P.2d 744 (1977).

[2] Finding of fact 3(b) states that the "Dearborn business property" (Garrison Street property) was sold "for $44,000.00 cash." In that respect, it is clearly erroneous.

in monthly installments of $300.00, including interest at 9% per annum. On October 19, 1979, Wife gave her daughters a $13,500.00 insurance savings certificate in satisfaction of their interest in the sale proceeds.

B. PERSONAL PROPERTY

1. Brighton State Bank: $13,500.00 cash.[3]
2. Toledo Trust Company: $880.00 cash.
3. 1966 Oldsmobile Toronado: There is no evidence in the record of its value at the DOM.
4. Household goods and furniture: There is no evidence in the record of their value at the DOM.
5. 27 shares Bell & Howell: There is no evidence in the record of their value at the DOM.
6. 200 shares of American Safety, Inc.: There is no evidence in the record of their value at the DOM.
7. P.J. Models, a business which was conducted at the Garrison Street address: There is no evidence in the record of its value at the DOM. However, there is evidence that it was a source of substantial cash used by the parties during the first year of their marriage. When Wife sold the Garrison Street property in 1975, she netted $6,322.30 from P.J. Models' bank accounts.
8. Five $1,000.00 United States Savings Bonds: These were given by Wife's mother to Wife "or" Husband in 1975.

At the DOM, Husband owned the following:

C. REAL ESTATE

1. Gertrude Street, Dearborn, Michigan: After moving some appliances and bedroom furniture into Wife's Edison Street residence, Husband sold this furnished residence in 1970 for a net of approximately $6,000.00.

D. PERSONAL PROPERTY

1. Automobile, subject to debt: There is no evidence in the record of its value at the DOM.
2. Coins: Husband testified that his collection was worth $1,500.00 at the DOM.

---

[3] Wife used her Brighton State Bank account to purchase her daughters' one-third equitable interest in the St. Clair County property.

3. Nonvested, unmatured Ford Motor Company retirement benefits: There is no evidence in the record of its value at the DOM.

4. Lifetime VA disability pension of $137.00 per month.

5. Two Sears debts: There is no evidence in the record of the amount of these debts at the DOM.

6. $5,000.00 cash insurance payment received by Husband at about the time of marriage due to the death of one of his daughters by a prior marriage.

In this divorce action, the lower court awarded to Wife:

E. REAL ESTATE

1. Leilani Estates, Lot 44, with house: This was the marital residence on the island of Hawaii. The land was purchased on January 6, 1972 for $5,900.00 and the house was purchased in March 1973 for $29,397.00. The value of the house and the lot at or about the time of divorce (TOD) was $60,000.00.

2. Leilani Estates, Lot 1: The vacant property was purchased on January 6, 1973 for $7,200.00. Its value at the TOD was $10,000.00.

3. Leilani Estates, Lot 23: The vacant property was purchased on January 8, 1971 for $5,200.00. Its value at the TOD was $7,500.00.

F. PERSONAL PROPERTY

1. Toledo property promissory note: Its value at the TOD was close to $16,000.00.

2. St. Clair property promissory note: Its value at the TOD was close to $37,000.00.

3. Puna Credit Union: $2,400 cash.

4. Michigan National Bank: $40,000.00 cash.

5. Honolulu Federal Savings and Loan: $17,000.00 cash.[4]

---

[4] Finding of fact 16 states, in relevant part: "[T]he Honolulu Federal Savings Certificate as deposited therein is [Wife's] childrens' share of the St. Clair property proceeds." This finding is clearly erroneous. Wife opened the Honolulu Federal Savings and Loan account on March 19, 1980 with money withdrawn from "the Huntington Bank in Toledo." The payments from the sale of the St. Clair property are in the People Bank of Port Huron. Moreover, Wife testified that to satisfy her daughters' claims to a portion of the St. Clair proceeds she had cashed her $13,500.00 Brighton State Bank certificate, put it into the parties' joint checking

6. Huntington Bank: $200.00 cash.

7. People Bank of Port Huron: $3,000.00 cash.

8. 1972 Ford Pinto: Its value at the TOD was not proven.

9. Household goods and furniture: The value of these items at the TOD was not proven.

10. Five $1,000.00 United States Savings Bonds: The value of these bonds at the TOD was not proven.

11. Equitable Life Insurance policy: Its cash value at the TOD was $530.00.

12. Bell & Howell stock: Its cash value at the TOD was $637.00.

13. Debt: VISA $79.16.

14. $2,500.00 which Wife was ordered to pay to Husband and his attorney.

The lower court awarded to Husband:

G. PERSONAL PROPERTY

1. 1972 Mark IV: Its value at the TOD was somewhere between $2,200.00 and $5,000.00.

2. VA disability pension of $149.00 per month.

3. Vested but not matured Ford Motor Company retirement benefits. Husband retired in 1976. The record does not indicate his length of service. On January 14, 1988, Husband will be entitled to receive an estimated $376.00 per month for the rest of his life. Of that amount, $93.00 relates directly to voluntary contributions made by Husband to the fund, all of which were made during the marriage of the parties. Its value at the TOD was not proven.

4. Chew-Chew Caboose, a "traveling food concession," comprised of a pickup truck and trailer: The value of these two items at the TOD was $15,000.00. The parties also own the design patent and the copyright, and they have authorized an

---

account, and then, on October 19, 1979, purchased a $13,500.00 Capital Life Insurance savings account in the name of her daughters. In her answering brief, Wife attempts to justify finding of fact 16 by stating, "The trial court apparently considered the deposit into the [Honolulu Federal Savings and Loan] account as partial repayment by WIFE to her children for their share of the proceeds from the sale of the St. Clair property[.]" No mention is made that the source of finding of fact 16 was Wife's proposed findings.

Ohio corporation "an exclusive license . . . to manufacture, and lease, sell, and market . . . the Caboose." Their values at the TOD were not proven.

5. A handgun.

6. A $2,500.00 payment from Wife.

7. Debts: (marital portion not proven)

(a) VISA: $1,440.80 minus $79.16

(b) $1,100.00 attorney's fees for Husband's workers' compensation claim.

(c) Shell Oil: $735.35.

(d) electric bill: $405.00.

(e) telephone bill: amount not in record.

(f) $3,000.00 owed to Hawaii National Bank for a solar water heater at the Leilani (Lot 44) residence.

The trial court ordered each party to pay his or her own costs and attorney's fees but the $2,500.00 payment which Wife was ordered to pay to Husband was specifically for Husband to pay to his attorney.

Paragraphs 6, 7, and 8 of the trial court's findings of fact and conclusions of law summarize the income situation of the parties during the marriage.

6. It is undisputed that [Husband] had ten surviving children from his prior two (2) marriages, four of which were minor children during a period of this marriage. The tax returns of [Wife] and [Husband] evidence alimony paid to one ex-wife in the sum of $14,410.00 over the period of this marriage. [Husband] denied any obligation to pay child support. . . .

7. It is undisputed that [Wife] had two children by her prior marriage which were minors during a period of this marriage. [Husband] testified [Wife] received the sum of $13,315.00 as and for child support from 1970 through 1976.

8. The income tax returns of [Wife] and [Husband] show fairly accurately the income of the parties during the period of this marriage. [Husband] averaged approximately $10,000.00 per year from 1970 through 1977. [Wife] averaged approximately $4,500.00 per year during the same period. However, the tax returns do not reflect [Wife's] child support or the income produced by her business (approximately $4,000.00 per

year) which was set off against depreciation and travel expenses and in substantial part used for the direct benefit of [Wife] and [Husband] ([Wife's] Exhibit 50).

For the years 1977, 1978 and 1979, [Wife] and [Husband] lost approxmately $12,000 per year. Therefore, $12,000 a year was required just to keep the business (Chew-Chew Caboose) operating to say nothing of the everyday expenses of [Wife] and [Husband]. Since the only income or cash asset of [Husband] was his then $1,800 per year pension, [Wife] must have provided these monies from her savings or income from property acquired before the marriage.

In fairness to both [Wife] and [Husband], their income or loss of income gives no substantial advantage to either regarding their respective claims for division of property.

Trial lasted a total of six days spread out over a four-month period. It was conducted on the theory that Wife was entitled to all of her premarital assets, the proceeds therefrom, and all of the assets that were acquired in whole or in substantial part with said proceeds. Consequently, most of the trial involved an item by item recreation of the ten-year financial history of the marriage.

*Au-Hoy v. Au-Hoy,* 60 Haw. 354, 590 P.2d 80 (1979), is authority for the rule that: "Where the parties, throughout their marriage, have treated their earnings separately, maintained separate expenses and accumulatd separate estates, it is within the discretion of the Court to allow each to keep his or her separate estate where such award is fair and equitable under all circumstances." *Id.* at 358.

However, the instant case does not present such a situation. Some of the income from wife's separate property went into her separate bank accounts while some went into joint bank accounts. Some of it was applied to joint uses. Both the separate and the joint accounts were used whenever the couple needed money. Tax returns were filed jointly and marital funds were used to pay all taxes no matter what income generated the tax. The three Leilani Estates lots were purchased in joint names and the monthly payments were made from joint funds.

Further, the method used by the trial court in allocating the three Leilani Estates lots is inherently inequitable. For example, the trial court concluded that the purchase of Lot 44 and its house

involved $31,125.87 of Wife's funds and $1,670.00[5] of Husband's funds.[6] The court, however, awarded Husband only $1,670.00 and awarded Wife the house and lot. Husband was not credited with a proportionate share of the appreciation in value.

When dividing property in a divorce case, the family court is required to consider all circumstances of the case, exercise its discretion, and make a "just and equitable" division of property. HRS § 580-47 (1976, as amended). For an appellate court to conclude that there has been an abuse of discretion, it must appear that the trial court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant. *Ahlo, supra; Title Guaranty v. Powley*, 2 Haw. App. 265, 630 P.2d 642 (1981).

This case involves a substantial amount of premarital property. In these kinds of cases, the following information is particularly relevant:

1. Itemized description and value at or about the DOM of all property owned by each party at the DOM.[7]

2. Itemized description and amount as of the DOM of all debts owed by each party at the DOM.[8]

3. Itemized description and value as of the date of acquisition of all property acquired during the marriage by only one of the parties by inheritance or gift.

4. Itemized description and value of all property owned by one or both of the parties at the TOD.

5. Itemized description and amount of all debts owed by one or both of the parties at the TOD.

This information will permit the segregation of nonmarital property net values (the DOM net value of each of the parties' premarital property and the date of acquisition net value of prop-

---

[5] The trial court's calculations appear not to account for Husband's involvement in the monthly payments of the house mortgage.

[6] Since the cash purchase price of the house and lot was $35,297.00, it follows that the purchase involved at least $2,501.10 more than the total of the amounts attributed to Husband and Wife.

[7] [8] Where the parties first commenced an economic partnership and later married, it may be appropriate to obtain this information as of the time they commenced their economic partnership.

erty acquired by only one of the parties during the marriage by gift or inheritance) from marital property values (value at the TOD of all property owned by either or both parties minus nonmarital net values) and will facilitate the decision-making and review processes.

As a general rule, it is equitable to award each divorcing party the DOM net value of his or her premarital property. In this case, however, no evidence was offered to prove and no determination was made of the DOM values of many of the assets and liabilities which Wife brought into the marriage. The explanation is that it was Husband's position in the lower court (and on appeal) that each party is entitled to the return of the assets (or their values if the assets were converted into cash) which each brought into the marriage. He did not ask for a share of the appreciation in value which Wife's premarital separate property received during the marriage. Husband's position caused that evidence to be irrelevant and he cannot now complain of not being awarded a share of that appreciation.

On that basis, Wife is entitled to the return of the following items or values:

A-1. Garrison Street property: $39,612.72.

A-2. Edison Street property: $41,000.00 (approximately net sales price).

A-3. (a) Toledo, Ohio property: $4,892.98; (b) Toledo, Ohio property: promissory note.

A-4. St. Clair County property: promissory note.[9]

B-2. Toledo Trust Company: $880.00.

B-3. 1966 Oldsmobile Toronado.

B-4. Household goods and furniture.

B-5. Bell & Howell stock.

B-6. American Safety, Inc., stock.

B-7. P.J. Models: $6,322.30 (estimated value).

On the same basis, Husband is entitled to:

C-1. (a) $6,000.00 from the sale of the Gertrude Street residence; (b) minus the amount of the two Sears debts; (c) plus the bedroom furniture and appliances.

D-1. (a) Automobile (b) subject to a debt.

---

[9] Wife used her Brighton State Bank account to purchase her daughters' one-third equitable interest in the St. Clair County property.

D-2. Coins.

D-3. The premarital portion of his Ford Motor Company retirement benefits.

D-4. His VA disability pension.

As a general rule, it is equitable to award each divorcing party, the date of acquisition net value of gifts and inheritances which he or she received during the marriage. In this case, there are no facts justifying departure from the general rule. On that basis, Wife should be awarded the savings bonds (B-8) and Husband should be awarded $5,000.00 cash insurance (D-6).

The following items were returned in actual or equivalent kind: Toledo, Ohio property promissory note (A-3(b)), St. Clair property promissory note (A-4), 1966 Oldsmobile Toronado (B-3), houseold goods and furniture (B-4), Bell & Howell stock (B-5), the five 1,000 savings bonds (B-8), automobile (D-1(a)), premarital retirement benefits (D-3), and VA disability pension (D-4).

It appears reasonable and equitable to cancel against each other the various claims and obligations involving the American Safety, Inc., stock (B-6), the automobile debt (D-1(b)), the two Sears debts (C-1(b)), the bedroom furniture and appliances (C-1(c)), and the coins (D-2).

Concerning nonmarital property, what remains is Wife's entitlement to the Garrison Street property proceeds (A-1), the Edison Street property proceeds (A-2), the Toledo, Ohio property proceeds (A-3(a)), the Toledo Trust cash (B-2), the P. J. Models' proceeds (B-7), and Husband's entitlement to the Gertrude Street proceeds (C-1(a)), and the $5,000.00 insurance payment (D-6).

Wife's entitlement adds up to $92,708.00; husband's adds up to $11,000.00.

At this juncture, the remaining assets and debts available to satisfy those remaining entitlements are:

| ITEM | VALUE |
|---|---|
| A. Leilani Estates, Lot 44 and dwelling (subject to a $3,000.00 debt to Hawaii National Bank for the solar heater.)[10] | $57,000.00 |

[10] As a general rule, it is equitable to require the divorcing party who is awarded the residence to pay the outstanding debt which relates to its solar heater's costs. In this case, there are no facts justifying departure from the general rule.

| | |
|---|---:|
| B. Leilani Estates, Lot 1 | 10,000.00 |
| C. Leilani Estates, Lot 23 | 7,500.00 |
| D. Michigan National Bank | 40,000.00 |
| E. Puna Credit Union | 2,400.00 |
| F. Honolulu Federal S&L | 17,000.00 |
| G. Huntington Bank | 200.00 |
| H. People Bank of Port Huron | 3,000.00 |
| I. Equitable Life Insurance Policy | 530.00 |

J. Debts (marital portion unknown):

| | |
|---|---:|
| VISA | (1,440.80) |
| attorney's fees | (1,100.00) |
| Shell Oil | ( 735.35) |
| electric bill | ( 405.00) |
| telephone bill | (Unknown) |
| K. Chew-Chew Caboose | 15,000.00 |
| L. Patent, copyright, and license agreement | Unknown |
| M. Marital portion of Husband's Ford Motor Company retirement benefits | Unknown |

An award of items A, B, C, and $18,208.00 cash to Wife and $11,000.00 to Husband satisfies their respective nonmarital property entitlements.

Now we examine whether the manner in which the lower court divided the remaining items is an abuse of discretion. The lower court divided them as follows:

| | ITEM | VALUE |
|---|---|---:|
| To Wife: | Cash | $33,392.00 |
| | Equitable Life Insurance Policy | 530.00 |
| | Debts: VISA | (79.16) |
| To Husband: | Cash | $ 2,500.00 |
| | Chew-Chew Caboose | 15,000.00 |
| | Patent, copyright, and license agreement | Unknown |
| | Marital portion of Husband's Ford Motor Company retirement benefits | Unknown[11] |

Debts:
| | |
|---|---|
| VISA | (1,361.64) |
| attorney's fees | (1,100.00) |
| Shell Oil | ( 735.35) |
| electric bill | ( 405.00) |
| telephone bill | (Unknown) |

The lower court found that Husband's "future prospects outweigh" Wife's. Given that finding and considering "all of the other circumstances of the case," HRS § 580-47 (1976, as amended), we conclude that the manner in which the lower court divided the remaining items was not an abuse of discretion.

Accordingly, we hold that the lower court abused its discretion when it (1) required Husband rather than Wife to pay the solar heater debt and (2) failed to award Husband $11,000.00 in consideration of the value of his nonmarital property. Consequently, the lower court is ordered to amend its decree (1) to obligate Wife and not Husband to pay for the Hawaii National Bank solar heater debt; (2) to order the full payment in cash of all of the debts that have been assigned to Husband as his sole and separate obligation; and (3) to award to Husband the net amount remaining from the $11,000.00 gross awarded to him after payment of his assigned debts pursuant to number (2) above.[12] As so amended, the decree dividing property is affirmed.

This case is remanded to the family court for further proceedings consistent with this opinion.

*Kenneth Alger Raupp,* defendant-appellant, pro se.

*William J. Rosdil* for plaintiff-appellee.

---

[11] Finding of fact 18 reads in part: "[T]his Court cannot evaluate [Husband's pension and retirement fund] in the absence of the present value of the fund or how it increased in value during the period of the marriage. It appears to this Court that Defendant failed to comply with at least the spirit of the rules of discovery . . . and as a result, this evidence is not before this Court."

[12] As a general rule, when awarding cash to a divorcing party who is being ordered to pay specified joint unsecured debts, it is equitable to use the cash to pay the specified debts and then to award and distribute the net cash. In this case, there are no facts justifying departure from the general rule.