BARBARA D. CASSIDAY, Plaintiff-Appellant, *v.* BENJAMIN B. CASSIDAY, Defendant-Appellee

NO. 9598

(FC-D NO. 114409)

MAY 24, 1985

BURNS, C.J., HEEN AND TANAKA, JJ.

208

OPINION OF THE COURT BY BURNS, C.J.

Defendant-appellant Benjamin B. Cassiday (Husband), then a graduate of West Point and a major in the United States Air Force, married plaintiff-appellee Barbara D. Cassiday (Wife) on May 14, 1949. They have two adult children. Husband retired from the United States Air Force in 1972 as a brigadier general. The parties separated on November 1, 1979, and Wife filed a complaint for divorce on December 27, 1979. At the time of filing, Wife was age 52 and Husband was age 56.

At trial, Wife sought the award of (1) property of a value equal to one-half of the value of marital property[1] and (2) spousal support of $5,000 per month until the further order of the court. In its decree issued on July 19, 1983, the family court awarded her less than she sought in both categories and she appealed. We reverse and remand for further proceedings consistent with this opinion.

---

[1] See *Raupp v. Raupp*, 3 Haw. App. 602, 658 P.2d 329 (1983).

## DIVISION OF PROPERTY

At the time of the divorce (TOD),[2] one or both of the parties had an interest in various properties as follows: Apartment 1613, Yacht Harbor Towers, Honolulu, Hawaii, was owned jointly by Husband and Wife. It was acquired in trade for a house that Husband had previously purchased with his nonmarital property and income therefrom.[3] The family court found the net value of the apartment at the TOD to be $185,000 ($225,000 minus a $40,000 mortgage). The apartment was awarded to Wife subject to the mortgage, but its net value was divided equally.

Unit 210, Lift One Condo, Aspen, Colorado, was owned by Husband. He acquired it in 1973 with $12,000 cash and a $40,000 mortgage. Part of its purchase price came from Husband's military pay. It was used for family purposes. Wife contends that its net value at the TOD was $360,000. The family court ordered it sold and the net proceeds divided equally.

In the late 1950s Husband's mother gave him a one-fourth interest in 5621 Kalanianaole Highway, Honolulu, Hawaii. We do not know its date of gift value. Husband and Wife used this property as their residence from 1973 until their separation in 1979. The value of the property in 1972 was $565,790. At the TOD its value was $860,000. Apparently, prior to 1973, Husband used only his nonmarital property and income therefrom to pay obligations relating to this property. It is not clear whether, or to what extent, Husband's activities during the marriage but prior to 1973 contributed to this property. Wife had no direct involvement with this property prior to 1973. In 1981 Husband inherited the remaining three-fourths interest. This property was awarded to Husband but he was required to pay Wife one-fourth[4] of its increase in value from 1973 through 1980, i.e., $73,500.

The property at 5699 Kalanianaole Highway was owned by Hus-

---

[2] As a general rule, the critical date is the date of the final separation.

[3] As a general rule, all of the income of the parties during marriage is marital income.

[4] The family court noted that it was crediting the marital estate with 50% of the appreciation rather than 25% but gave no reason for its action.

band when he married Wife. Its tax assessed value[5] at the time of marriage (TOM) was $13,703. Wife claimed that its net value at the TOD was $777,500 minus a $50,000 mortgage or $727,500. The family court made no finding on that issue. Wife's only direct involvement with this property was her participation in its renovation and refurnishing in 1978. It is not clear whether, or to what extent, Husband's activities during the marriage contributed to this property. Apparently, Husband used only his nonmarital property and income therefrom to pay obligations relating to the property. It was awarded to Husband.

The property at 5691 Kalanianaole Highway was owned by Husband when he married Wife. Its tax assessed value at the TOM was $8,455. In 1976 Husband gave two-thirds of this property to their two children. Wife claimed that the value of the property at the TOD was $444,000. The family court made no finding on that issue. Wife had no direct involvement with this property. It is not clear whether, or to what extent, Husband's activities during the marriage contributed to this property. Apparently, Husband used only his nonmarital property and income therefrom to pay obligations relating to the property. Husband was awarded his one-third interest.

The property at 5687 Kalanianaole Highway was owned by Husband at the TOM. Its tax assessed value at the TOM was $6,589. Wife had no direct involvement with this property. It is not clear whether, or to what extent, Husband's activities during the marriage contributed to this property. Apparently, Husband used only his nomarital property and income therefrom to pay obligations relating to the property. In 1973 Husband sold it on an agreement of sale. The balance due at the TOD was $70,000. This receivable was awarded to Husband.

The parties jointly owned a parcel of property in North Carolina. Wife valued it between $8,000 and $10,000. The family court made no finding as to its value. The family court ordered it sold and the net proceeds divided equally.

In 1961 Husband's mother gave him a 25% interest in Hawaii Loa Ridge. We do not know its date of gift value. Husband paid the $18,000 gift tax due with funds from the following sources: "loan/mil pay

---

[5]In 1949 the tax assessed value was no more than 60% of fair market value. *See* HRS § 246-2 (1976). In those days, however, valuations of fair market value for tax purposes were often much lower than actual fair market value.

savings/rental returns from Niu Beach[.]" Apparently, Wife had no direct involvement with this property. It is not clear whether, or to what extent, Husband's activities during the marriage contributed to this property. Apparently, Husband used only his nonmarital property and income therefrom to pay obligations relating to the property. In the 1970s Husband sold his interest and the proceeds were "invested in Partners of Hawaii, Kaloko (Kona), Kapalua (Maui), plus refurbishing of the 5621 house[.]"

Partners of Hawaii XXII, XXIII, and XXIV together comprise of Husband's total limited partnership investment of $364,000. Husband testified that these investments were placed in joint ownership by mistake. The family court made no findings as to their values at the TOD. These interests were awarded one-half to Husband and one-half to Wife.

The Kaloko, Kona, property was purchased by Husband in his name for $18,000. We do not know whether, or to what extent, Wife's or Husband's activities during the marriage contributed to the increase in value of this property. Apparently, Husband used only his nonmarital property and income therefrom to pay obligations relating to the property. The family court made no finding as to its value at the TOD. It was awarded to Husband.

Husband purchased in his name a one-half interest in a condominium apartment in Kapalua, Maui. The cost of the apartment was $160,000, of which $128,000 was financed. We do not know whether, or to what extent, Wife's or Husband's activities during the marriage contributed to this property. Apparently, Husband used only his nonmarital property and income therefrom to pay obligations relating to the property. The family court made no finding as to the value of Husband's one-half interest at the TOD. It was awarded to Husband.

On June 30, 1978 Husband entered into a partnership named Miralani Business Park Co. Husband's share is 19% of the profits and 20% of the losses. On July 1, 1978 the partnership leased property in San Diego, California, for a 75-year term from the Mary Lucas Pflueger Trust and the Charlotte Harriet Lucas Cassiday Trust. As of October 2, 1982 the leasehold was valued at $10,500,000. Husband was awarded his interest in this partnership.

Husband was awarded his interests in Kukui Investors, Sunbelt Investors, and Diamond Head Investors. The family court made no findings as to the sources of these investments or their values, if any. Apparently, they have little value, if any.

As of June 1, 1980 Husband had $90,524 on deposit at Honolulu Federal Savings and Loan. Husband testified that he spent it in 1981 to pay outstanding bills and Wife's *pendente lite* support of $3,500 per month.

Wife was awarded one-half of 26/30 or 43% of all of Husband's net military retirement cash benefits as and when he receives them. At the TOD his gross monthly cash benefit was $3,500 and his net was $2,670.[6]

The family court also divided personal property including automobiles, a catamaran, stocks and bonds which Wife valued at $62,640, and furniture, jewelry, antiques, and art objects which Wife valued at $240,000. The family court made no findings as to the value of the personal property awarded to each.

In her opening brief at page 3, Wife states that she "is not claiming that the division of personal assets was erroneous — they were evenly divided." Her contention is that the family court abused its discretion when it failed to award her one-half of all of the increase in value during marriage of the nonpersonal property. She further contends that since marital funds were used to pay a portion of Husband's gift tax on his Hawaii Loa Ridge property, the properties purchased with the proceeds of its sale were also marital and should have been divided equally.

In a divorce case, the family court is required to divide all of the property of the parties, whether community, joint, or separate, on a just and equitable basis. HRS § 580-47(a)(3) (Supp. 1984). The applicable standard of review of the family court's decision is the abuse of discretion standard. *Au-Hoy v. Au-Hoy,* 60 Haw. 354, 590 P.2d 80 (1979).

In *Raupp v. Raupp,* 3 Haw. App. 602, 658 P.2d 329 (1983), we established the general rule that it is equitable to award each divorcing party the date of marriage (DOM) net value of his or her premarital property and the date of acquisition net value of gifts and inheritances which he or she received during the marriage.

In *Takara v. Takara,* 4 Haw. App. 68, 660 P.2d 529 (1983), we indicated that the after acquisition but during marriage increase in the net value of property separately owned at the DOM or acquired during the marriage by gift or inheritance and still separately owned at the TOD is a separately identifiable item to be awarded in the division of property

---

[6]The record does not contain an itemization of the amounts deducted.

upon consideration of all of the relevant circumstances of the case. Here, the family court failed to determine the amount of the increase in value after acquisition but during marriage of some of Husband's separately owned properties and to give appropriate consideration to that increase in value as a separately identified item.

In *Takara,* we also indicated that there is no general rule governing the award of such increase in value. We now amend that statement and establish a general rule.

As a general rule, it is equitable to award each divorcing party one-half of the after acquisition but during marriage real increase in the net value of property separately owned at the TOM or acquired during the marriage by gift or inheritance and still separately owned at the TOD.[7] The real increase is that increase which is not directly attributable to inflation.

Using 5699 Kalanianaole Highway as an example and assuming (but not deciding) the relevant values and consumer price index (CPI), the computation of the after acquisition but during marriage real increase in its net market value is as follows:

|  | 100.00 | 1967 CPI |
|---|---|---|
|  | 204.60 | 1979 CPI |
| divided by | 69.70 | 1949 CPI |
|  | 2.94 | CPI increase factor between 1949 - 1979 |
|  | 22,838.00 | 1949 net market value for tax purposes |
| times | 2.94 |  |
|  | 67,040.00 | 1949 net value converted into 1979 dollars |
|  | 727,500.00 | 1979 net market value |
| minus | 67,040.00 |  |
|  | 660,460.00 | After acquisition but during marriage real increase in net market value |

Turning to the division of Husband's right to cash retirement benefits, we also establish some general rules. As a general rule, when dividing one divorcing party's right to cash retirement benefits, it is equitable to award the other party a percent of the gross cash benefits and to make

---

[7]For a brief explanation of the rationale of this rule, *see* Kastely, *An Essay in Family Law: Property Division, Alimony, Child Support, and Child Custody,* 6 Haw. L. Rev. 381 at 389-391 (1984).

the award distributable as and when the cash benefits are received. *See Wallace v. Wallace,* 5 Haw. App. 55, 677 P.2d 966 (1984). As a general rule, the percent awarded should be one-half of the percent derived by dividing the number of years credited to retirement during the marriage by the total number of years credited to retirement. As a general rule, the award should be structured so that each divorcing party is solely liable for the income taxes due with respect to the gross cash benefits distributed to him or her.

## SPOUSAL SUPPORT

With respect to spousal support, the family court found and ordered in relevant part:

Wife . . . is not employable, not rehabilitable, and therefore, entitled to support.[8]

Wife has shown the need for the following:

| ITEM | COST PER MONTH |
|---|---|
| Mortgage - Yacht Harbor Tower | $ 780 |
| Telephone | 50 |
| Car operation and maintenance | 130 |
| Food | 300 |
| Clothing | 200 |
| Medical/Dental | 100 |
| Laundry/Cleaning | 100 |
| Recreation | 400 |
| Miscellaneous | 240 |
| TOTAL | $ 2,300 |

[8]Since a disability or handicap is never a license to malinger, the family court should be very hesitant to find that the party seeking spousal support has absolutely no ability to meet his or her needs independently. Moreover, if it makes such a finding, it should make clear that the finding does not thereafter excuse the party seeking spousal support from satisfying his or her continuing duty to exert reasonable efforts to generate income and attain self-sufficiency. *See Saromines v. Saromines,* 3 Haw. App. 20, 641 P.2d 1342 (1982). Finally, a finding that the party seeking spousal support failed to satisfy his or her continuing duty to exert reasonable efforts to generate income is not necessarily a complete bar to the award of spousal support. Rather, the family court should reduce the amount that would otherwise be awarded by the amount of spousal support that should have been generated by the party seeking spousal support but was not because of the violation of the duty.

Since Wife shall receive the sum of $1,150 of Husband's retirement benefits, this amount shall be deducted from her total needs of $2,300 per month to determine the amount that is necessary for her support. Thus, Wife is entitled to $1,150 per month for spousal support to continue until the death or remarriage of Wife or until further order of the Court.

(Footnote added.)

In this appeal Wife complains that the award fails to include "real property taxes, insurance, and provision for income taxes and is low in certain areas."

In her amended position statement filed in the proceedings below on October 9, 1981, Wife stated in relevant part:

[Wife] deems it reasonable that:

1. [Wife] be awarded $5,000.00 per month as and for spousal support until further order of the court. [Wife] was awarded $3,500.00 temporary spousal support on May 27, 1980. While this is sufficient to her needs, it is clear that the [Husband] has extensive wealth in the form of business investments, trusts and estates of which he is a beneficiary.

This is a thirty-two (32) year marriage and [Wife] is entitled to a standard of living sustainable on the sum of $5,000.00 per month in view of [Husband's] income and potential income from his various income sources.

When deciding in a divorce case whether one party must pay periodic spousal support to the other, for how long, and how much, the family court must consider all of the factors enumerated in HRS § 580-47(a) (Supp. 1984). Generally, however, the most relevant factual questions are sequentially as follows:

1. Taking into account the property awarded in the divorce case to the party seeking spousal support, what amount, if any, does he or she need to maintain the standard of living established during the marriage? *See* HRS § 580-47(a) (Supp. 1984). If there is no need for spousal support, then there is no obligation to pay. Here, since Wife admits that $3,500 per month is sufficient to meet her need, she is not entitled to more than that even if Husband is able to pay more. However, we conclude that the failure to allow for Wife's income tax liability on the amount awarded is an abuse of discretion.

2. Taking into account the income of the party seeking spousal support, or what it should be, and the income producing capability of

the property awarded to him or her in the divorce action, what is his or her ability to meet his or her need independently? *See* HRS § 580-47(a) (Supp. 1984). If the party seeking spousal support can satisfy his or her need independently, then there is no obligation to pay. Here, Wife is entitled to 43% of Husband's military retirement gross cash benefits or $1,505 per month.[9] However, no determination has been made of the income producing capability of the property awarded to her in the divorce action or of her income tax liability. Without that information, it is impossible to determine whether, or to what extent, Wife has the ability to meet her need, if any, independently.

3. Taking into account the income of the party from whom spousal support is sought, or what it should be, and the income producing capability of the property awarded to him or her in the divorce action, what is his or her ability to meet his or her own need while meeting the need for spousal support of the party seeking spousal support? *See* HRS § 580-47(a)(11) (Supp. 1984). Here, no determination has been made on this question.

Accordingly, the division of property and the award of spousal support are reversed. This case is remanded for further proceedings consistent with this opinion.

*Charles R. Kozak* for appellant.

*Daniel S. Ukishima* (with him on the brief: *Jay T. Suemori, Ukishima & Matsubara* of counsel; and *Wallace S. Fujiyama, Miles B. Furutani,* and *Steven J. T. Chow, Fujiyama, Duffy & Fujiyama* of counsel) for appellee.

---

[9]For purposes of spousal support periodically received, cash retirement benefits received are income.