CAROL JANE LUSCH, Plaintiff-Appellee, *v.* JOHN THOMAS FOSTER, Defendant-Appellant

NO. 8069

(FC-D NO. 7718)

JUNE 22, 1982

BURNS, C.J., HEEN, J., AND CIRCUIT JUDGE CHUN
ASSIGNED BY REASON OF VACANCY

---

OPINION OF THE COURT BY BURNS, C.J.

Husband and wife married on January 3, 1975. On March 8, 1979, wife filed a complaint for divorce. On May 17, 1979, the lower court filed an Amended Order on Relief Pendente Lite, which, *inter alia,* gave husband control of the charter fishing business and ordered him to pay wife $400 per month, $200 on the 15th and $200 on the last day of each month, commencing March 15, 1979.

On August 20, 1979, a decree of absolute divorce was filed in favor of wife, which "reserved until the further order" of the court "[a]ll matters of division of property."

On November 19, 1979, the parties entered into a "Property Settlement, Sales and Security Agreement" (PSSSA) which awarded

husband Scuba Wagon, Inc., Cap'n Mike's Deep Sea Charters, Inc., the vessel "Charger" and all rights to Slip 21 at the Lahaina Small Board Harbor, required husband to pay all of the parties' personal and corporate debts incurred prior to March 8, 1979, and required husband to pay wife $14,500 in property settlement as follows: $3,500 upon the execution of the agreement and the $11,000 balance via a promissory note, secured by the vessel Charger, as follows: $400 per month for eleven months, commencing January 1980 and one final balloon payment of January 2, 1981.

The PSSSA contained two unique paragraphs:

8. *REMEDIES ON VIOLATION.* Husband acknowledges that in the event he breaches any term of this Agreement or of the promissory note executed herewith, Wife shall have available to her all of her remedies at law or at equity, and specifically Wife may reassert all of her rights in the property of the marriage which she could have asserted on the date she filed her Complaint for divorce. Time shall be of the essence of this Agreement. In the event of such breach, Husband shall pay a reasonable attorney's fee for the enforcement of Wife's rights.

\* \* \* \* \*

11. *AGREEMENT AS ORDER.* The parties hereby agree and stipulate that this Agreement shall be and constitute an Order of the above-entitled Court.[1] [Footnote added.]

On November 20, 1979, the lower court filed an "Order on Property Settlement" prepared by wife's counsel and approved as to form by husband's counsel, which stated:

In accordance with the stipulation of the parties hereto, the terms of that certain "Property Settlement, Sales and Security Agreement" are hereby adopted by this Court as the final property settlement between the parties except in the event of breach thereof, and each of said parties is hereby ORDERED to perform the duties set forth therein.[2] [Footnote added.]

---

[1] Contrary to the language of paragraph 11 of the PSSSA, the parties cannot decide what is or is not an order of the family court, only the family court can.

[2] We recommend against conditional decrees of any kind, especially property settlement decrees.

On February 7, 1980, wife filed a Motion to Re-Open Case and Re-Set Trial Date "for the reason that [husband] has breached and failed to perform under" the PSSSA.

From the beginning of the case, husband had been represented by counsel. However, at the hearing on wife's February 7, 1980, motion, husband appeared *pro se,* claiming inability to pay for an attorney. At that hearing husband agreed to the reopening and stated:

I think that the settlement is a fair settlement, but I believe that the actual payment should be extended out over a number of — period of years so I can pay some of my old bills back and take care of my present-day finances.

On February 28, 1980, the lower court filed an Order Re-Opening Case and Setting Trial Date.

During the trial, the following dialogue occurred:

THE COURT: — I just want to get it very clear so that we won't have any misunderstanding about it. It is your position that the original Settlement Agreement that you people entered into, there's something you want to have changed.

MR. FOSTER: It is my understanding, Your Honor, that the original Agreement is a fair and honest agreement; but I'm unable to pay the monthly payments. It is also my understanding —

THE COURT: Wait a while. If you can't pay, we're going to do something about paying it. The real question is whether you consider — you want to go and abide by that or you don't want to abide by that.

MR. FOSTER: I do want to abide by that.

THE COURT: Why haven't you abided by it?

MR. FOSTER: Because I haven't been financially capable.

THE COURT: Well, you haven't abided by this.

MR. FOSTER: Pardon me?

THE COURT: You haven't abided —

MR. FOSTER: I've done the best I can.

THE COURT: So you want to change that now?

MR. FOSTER: Yes, I would like to change it.

THE COURT: So it could be worse for you or better for you, but you want to have it changed?

MR. FOSTER: Correct, your Honor.

After the trial. the lower court filed on May 6, 1980, an Amended Order on Property Settlement which required husband to pay wife $16,000 ($10,700 balance due under the PSSSA, $2,000 in delinquent pendente lite spousal support, and $3,300 attorneys fees and costs) and which specified that if husband did not pay the $16,000 in full on or before June 9, 1980, the Charger should be sold and the proceeds used to pay the $16,000 and all debts "incurred by the parties during the marriage and prior to March 8, 1979." This order had been prepared by wife's counsel in recordable form but did not contain husband's signature indicating his approval as to form.

On May 19, 1980, husband, acting *pro se,* filed a "Motion for Reconsideration or New Trial or, in the Alternative, Stay of Proceedings to Enforce Decree." On May 23, 1980, husband, through new counsel, filed a "Motion for Reconsideration of Decision or Rehearing; Motion to Set Aside Order Denying Defendant's Motion for Reconsideration of New Trial or in the Alternative Stay of Proceedings to Enforce Decree; Motion to Set Aside Amended Order of Property Settlement" based on Rules 59(b), 59(g), 60(b), and 58, Hawaii Family Court Rules (HFCR) (1977), and Rule 23, Rules of the Circuit Courts (RCC) (1971). On June 16, 1980, the family court filed an Order Setting Aside Amended Order on Property Settlement apparently on grounds that the amended order had been signed before husband had a chance to object under Rule 23, RCC, and Rule 58(b), HFCR.

On July 1, 1980, the family court approved a stipulation allowing each party to submit proposed findings of fact and conclusions of law and a form of decree, which they both did. On July 17, 1980, the family court filed its findings of fact and conclusions of law which reached the same result as its prior May 6, 1980 Amended Order on Property Settlement. On August 8, 1980, the family court filed an Amended Order on Property Settlement which was the same as the May 6, 1980, Amended Order on Property Settlement, except that it ordered payment of the $16,000 on or before September 16, 1980, rather than on June 9, 1980.

On July 25, 1980, husband filed a "Motion for Further Hearing, Motion for Reconsideration of Decision, Motion for New Trial, Motion for Amendment of Decision and Order" based on Rules 59(a), (b), and (c), HRCP (1977). This motion was heard on August 13, 1980, and on August 21, 1980, the family court denied it.

I.

On various grounds husband contends that findings of fact 10, 11, 13, and 14 are clearly erroneous and that conclusions of law 1, 2, and 3 are an abuse of discretion.

*FINDINGS OF FACT*

10. On November 20, 1979, this Court entered its "Order On Property Settlement" which adopted that certain Property Settlement Agreement made between the parties on November 19, 1979, under the terms of which Defendant was to pay Plaintiff the sum of $14,500 and to assume all the marital debts and Defendant was to receive as his sole property the vessel "Charger", the stock in Scuba Wagon, Inc., and the mooring agreement with the State of Hawaii. Both parties were represented by counsel at this time.

11. Defendant paid Plaintiff the total sum of $3,800 under the Property Settlement Agreement, but breached said Agreement by failing to make the monthly installments called for by said Agreement; leaving a balance of $10,700 due under the Agreement.

13. The property owned by the parties at the time of the filing of the complaint in this action consisted primarily of the vessel "Charger" which had a market value of $65,000, and the mooring agreement in the name of Defendant with the State of Hawaii. While this mooring agreement is non-transferrable, it does have some value.

14. The marital debts of the parties remaining at the time of the trial of this case totaled $36,181.44, including a balance of $26,358 due and owing to the Small Business Administration for the loan on the vessel "Charger".

*CONCLUSIONS OF LAW*

1. Defendant shall pay Plaintiff the sum of $10,700 in full payment of all Plaintiff's interest in the marital property and $2,000 in satisfaction of the temporary support payments due and unpaid to Plaintiff under the May 17, 1979 order of this Court.

2. In view of the length of this litigation, including the number of appearances made on behalf of Plaintiff, and the time and effort devoted to the Property Settlement Agreement, Defen-

dant shall pay Plaintiff the sum of $3,300 which this Court deems to be a reasonable attorneys' fee.

3. The foregoing sum of $16,000 shall be paid within 60 days from the date of the filing hereof; and if not paid by that date, the "Charger" shall be sold to satisfy said payment.

We will deal with each ground individually.

1. Husband contends that there was no substantial competent evidence of the value of the Charger or the slip.

There is substantial evidence in the record that the Charger's market value is $65,000 and that Slip 21 is worth "at least fifty thousand dollars." Husband's argument is directed to the competence of the evidence. The question of whether the evidence could have properly been admitted over objection is irrelevant because no objection was made and the evidence was received and is part of the record; consequently, it is substantial evidence supporting the trial judge's findings and conclusions.[3] *Kaiman Realty, Inc. v. Carmichael,* 2 Haw. App. 499, 634 P.2d 603 (1981); *Cafarella v. Char,* 1 Haw. App. 142, 615 P.2d 763 (1980).

2. Husband contends that the PSSSA should not have been considered by the trial court in making its decision.[4]

Wife testified about the PSSSA on direct without objection and on cross in response to husband's questions. Here again, the question of whether or not wife's testimony about the content of the PSSSA was admissible over objection is not relevant because it was admitted without objection.

3. Husband contends that the trial court failed to consider the factors which section 580-47, Hawaii Revised Statutes (HRS) (1976, as amended), and applicable case law[5] required it to consider and it failed to make essential findings of fact thereon.

At the conclusion of the April 25, 1980, hearing, the trial judge stated:

THE COURT: You know, I have tried to go over the various

---

[3] *See* Rule 108(a)(1), Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes, effective January 1, 1981.

[4]*See* Rule 408, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes, effective January 1, 1981.

[5] *See Carson v. Carson,* 50 Haw. 182, 436 P.2d 7 (1967).

matters that have been brought up. As a result of this hearing — and I have not been able to really come to what I would consider a figure that I would be completely satisfied with as a proper figure — I am inclined to think that Miss Lusch is entitled to more than what she showed in her Settlement Agreement.

But there is some question in my mind as to exactly where the' marriage started financially, and some of the items that happened in between is not completely clear to me. Part of it is perhaps because there has not been a complete disclosure on the part of Mr. Foster as to what has happened.

But what I've decided to do is to, in essence, because of my lack of a satisfied feeling that I have arrived at some clear figure, I'm going to go back to the settlement figure; and I'm going to order that the settlement figure be paid substantially in the manner in which it was arranged for at that time.

\* \* \* \* \*

I think, Mr. Foster, the figure is a very conservative figure as I see it. As I indicated earlier, it's only because I cannot be fully satisfied — that a larger figure satisfied myself that a definite larger figure could be ascertained — I'm using the settlement figure. But I think you're getting off easy.

Husband contends that the trial court's statement constitutes its acknowledgment that it did not follow HRS § 580-47 (1976, as amended). We disagree. We interpret the trial court's statements as its affirmation that wife was entitled to at least, and perhaps more than, what she was being awarded and as its apology to her for not awarding her more.

We also interpret the trial court's statements as its acknowledgment that the evidence was not all that it should have been. However, the fact that HRS § 580-47 requires the trial court to take certain matters into consideration does not require it to require the production of evidence on those matters or to withhold its decision until such evidence is received. If there is no evidence that the matter exists, then for purposes of the trial it does not exist. If there is conflicting evidence that the matter exists, then the trial court is entitled to use its discretion in resolving the conflict. The fact that the trial court did not expressly resolve in its findings of fact the conflicts in the evidence is not grounds for reversal on appeal. *Au-Hoy v. Au-Hoy*, 60 Haw. 354, 590 P.2d 80 (1979). The issue is

whether the trial court's decision consitutes a manifest abuse of the trial court's wide discretion in such matters, not whether it has resolved all conflicts in the evidence in its findings of fact. *Id.*

4. Husband contends that the award of $3,300 attorney's fees was improper because there is no showing in the record (a) "of the amount of hours spent by the attorney or the amount of time billed . . ."; and (b) that husband was in any better position to pay attorney's fees than wife.

"[A]n award of attorney's fees is in the sound discretion of the trial court, limited only by the standard that it be fair and reasonable." *Farias v. Farias,* 58 Haw. 227, 233, 566 P.2d 1104, 1109 (1977). "The fact that the trial court was not provided with an hourly breakdown of services is not necessarily grounds for reversal of an award of fees." *Smothers v. Renander,* 2 Haw. App. 400, 633 P.2d 556, 563 (1981).

In view of the "circumstances of the case," we readily understand why the family court ordered husband to pay wife's attorney's fees. Since we do not find the fee allowed to be disproportionate to the extent of legal services normally required to be expended in a case of the nature involved here, *Sharp v. Hui Wahine, Inc.,* 49 Haw. 241, 413 P.2d 242 (1966), we find no abuse of discretion.

5. Husband contends that the evidence shows that the Small Business Administration debt was $27,855.72 on February 26, 1979, and $26,358 on July 25, 1979, and that the trial court erred in finding that it was $26,358 "at the time of the trial" on April 25, 1980.

We agree that the record does not reveal the debt balance as of "the time of the trial" on April 25, 1980, and that finding of fact 14 is incorrect in that respect. However, husband does not appear to be prejudiced by the error. Although we do not know the correct figure, we know that the business was in husband's control and that if husband was making the required payments the correct balance at the time of trial was no more than $26,358. Therefore, the error is harmless. Rule 61, HFCR (1977).

## II.

Husband contends that the trial court reversibly erred when it denied his July 25, 1980, motion for further hearings under Rule

59(a), HFCR (1977); for reconsideration or rehearing under Rule 59(b), HFCR (1977); and for a new trial under Rule 59(c), HFCR (1977).

All three cited rules require "good cause" and all involve the exercise of wide discretion which will not be reversed on appeal absent abuse thereof. *Lee v. Kimura,* 2 Haw. App. 538, 634 P.2d 1043 (1981). We find no good cause and no abuse of discretion.

Husband, however, contends that we should require the trial judge to afford him the opportunity to correct his trial mistakes, which he contends were made because he was not represented by counsel at trial. We know of no rule of law applicable to domestic relations cases[6] which gives a party not represented by counsel at trial, post-trial, or on appeal any greater benefit or right than a party represented at trial by retained counsel, competent or otherwise, and we decline the invitation to create one.

### III.

In an effort to avoid such problems in the future, we will comment *sua sponte* upon the unusual portions of the PSSSA and their incorporation into the November 20, 1979, Order on Property Settlement.

A divorcing couple may enter into a property settlement agreement (PSA). Depending on its language, the PSA may or may not have legal effect absent approval by the family court and it may or may not have independent legal existence if and when it is incorporated into the family court's decree. *Jendrusch v. Jendrusch,* 1 Haw. App. 605, 623 P.2d 893 (1981). However, no matter what the PSA says, it does not in any way restrict the family court's exercise of its powers under HRS § 580-47 (1976, as amended), and the family court's decision whether or not to approve and incorporate the PSA into its decree is a matter of wide discretion.[7] *Brown v. Brown,* 1 Haw.

---

[6] For the rule of law applicable to criminal cases, *see State v. Allen,* 2 Haw. App. 606, 638 P.2d 338 (1981).

[7] If the PSA is presented for incorporation on an all or nothing basis and if the court decides to change it, then, before taking any further action, the court must give the parties the choice of agreeing to the change or proceeding on a contested basis.

App. 533, 621 P.2d 984 (1981); Ahlo v. Ahlo, 1 Haw. App. 324, 619 P.2d 112 (1980).

We do not question the divorcing couple's ability to agree as the parties did in paragraph 8 of the PSSSA. We do, however, question the lower court's decision to incorporate such language into its decree. When it incorporated paragraph 8 into its decree, the lower court issued a conditional[8] property settlement decree and created undesirable confusion concerning the finality of the decree for purposes of appeal and enforcement.

Affirmed.

*Richard L. Rost (Mark T. Honda* and *Guy A. Haywood* with him on the brief) for defendant-appellant.

*Edward F. Mason (Mason* and *Scott* of counsel) for plaintiff-appellee.

---

[8] *See* 47 AM. JUR.2d, *Judgments,* § 1052 (1969).