PATRICIA ROSSITER, Plaintiff-Appellee, *v.* DON P. ROS-SITER, JR., Defendant-Appellant

NO. 8751

(FC-D NO. 4310)

JULY 6, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Defendant Don Rossiter[1] ("Husband") appeals from the Supplemental Decree of Absolute Divorce entered by the Family Court of the Fifth Circuit on January 4, 1982.[2] Finding no reversible error, we affirm the lower court's decree.[3]

The issues and our answers are:

1. Did the trial judge err in ruling that he did not have jurisdiction over land and improvements owned by a person not made a party to the action? No.

2. Did the trial judge err in failing to enforce an alleged antenuptial agreement between the parties? No.

---

[1] At the September 3, 1981 hearing, the family court granted Husband's oral motion to amend the pleadings to reflect that he is "Don P. Rossiter, Jr."

[2] Pursuant to Husband's motion, the family court granted him a thirty-day extension to file his appeal due to his excusable neglect. Although Husband's only notice of appeal was filed prior to the court's order approving the extension, it was timely filed since it was made within the additional period to file an appeal granted by the court. *Ahlo v. Ahlo*, 1 Haw. App. 324, 619 P.2d 112 (1980). Therefore, we have jurisdiction to hear this appeal.

[3] No findings of fact and conclusions of law (FOFCOL) were entered as required by Rule 52(a), Hawaii Family Court Rules. The lower court's failure to enter FOFCOL, however, does not affect our jurisdiction, and we can still decide the appeal if we are in a position to do so. *See In re Sing Chong Co.,* 1 Haw. App. 236, 617 P.2d 578 (1980), citing 9 Wright & Miller, Federal Practice and Procedure: *Civil* § 2577 (1971); *Lusch v. Foster,* 3 Haw. App. 175, 646 P.2d 969 (1982).

The relevant facts are as follows. Husband married plantiff Patricia Rossiter ("Wife") on December 31, 1973 at Santa Barbara, California. The parties moved to Hawaii in March 1974 and shortly thereafter purchased real property at Moloaa on the island of Kauai. The $8,000 for the down payment on the property and money to buy building materials had been provided by Wife out of the $3,000 which she brought into the marriage and a $5,500 gift to Wife from her mother, Charlene Snow.

A further $5,000 gift from Mrs. Snow to Wife in 1976 was used to buy building materials, to make a partial prepayment on the Moloaa property, and to establish an automobile repair shop in Kilauea, Kauai, known as "Don's Kilauea Garage." Mrs. Snow held title to the land and improvements used in the garage business, and the parties paid her monthly rent.

In 1979, Mrs. Snow and Wife's grandfather, Victor Valet, each gave Wife $3,000 which she used to buy building materials, appliances, and furniture for the house, as well as paying for some business expenses for the garage. When Husband had to go to Honolulu for a cataract operation in 1980 and was thereafter unable to work for four months, Mrs. Snow gave Wife $3,300 and $1,800 which Wife used for Husband's trip, the house payments, and living expenses.[4]

Husband, on the other hand, brought into the marriage a sailboat which he had bought for $3,995 in 1966 and some car repair tools. With the help of his two sons by a previous marriage and some friends, Husband cleared the Moloaa land and constructed a house thereon in which the parties resided until their separation in 1981.

Wife filed for divorce on January 27, 1981. In Husband's position statement, he claimed that the land and improvements used in the car repair business were held in trust for the parties by Mrs. Snow. Thus, as part of the division of property, Husband wanted the industrial lot to be "appraised indepen-

---

[4] In addition to the aforementioned gifts, Mrs. Snow gave Wife and Husband $400 each for Christmas in 1980. She also gave Husband a "floor lift" for the garage as a birthday present.

dently and listed for sale at not less than the appraised value, with the proceeds of the sale to be used first to repay all sums owing to Mrs. Snow, then divided equally between the parties."

Since Mrs. Snow was not a party to the divorce action, Wife filed a motion in limine to exclude the hearing of any evidence on the issue of trusteeship. The court granted Wife's motion and ruled that the issue of trusteeship should be the subject of a circuit court civil action.

During the course of the hearings, Husband alleged that the parties had entered into an oral antenuptial agreement to the effect that Wife would "never" force the sale of a marital residence.

The family court entered a Decree of Absolute Divorce on October 22, 1981 and a Supplemental Decree of Absolute Divorce on January 4, 1982. The latter is the subject of this appeal.

The Supplemental Decree provided, among other things, that the parties' Moloaa residence was to be sold. Proceeds of the sale were to be distributed in the following order:

(a) costs of sale, including reasonable realtor's or commissioner's fees;

(b) $18,000 to Wife;

(c) $3,000 to Robert Bean;[5] and

(d) the balance, if any, to be divided equally between Husband and Wife.

On appeal, Husband claims that the family court erred in (1) declining to assume jurisdiction over Mrs. Snow's Kilauea land and improvements and (2) failing to enforce the parties' alleged oral agreement not to force a sale of their marital residence upon separation or divorce.

I.

We find no merit in Husband's first claim because Mrs.

---

[5] Bean, a carpenter by trade, helped Husband extensively in building the house and frequently provided materials for the home.

Snow was not a party to the action. As record owner of the Kilauea land and premises on which the auto repair business was conducted, Mrs. Snow was a necessary and indispensable party to any action which affected her interest in the property. *In re Estate of Grace,* 34 Haw. 25, 33 (1936); *Brown v. Kaahanui,* 29 Haw. 804, 807-809 (1927); *Smythe v. Takara,* 26 Haw. 69, 72 (1921). Since Mrs. Snow had not been made a party,[6] the family court properly held that it had no jurisdiction to hear and determine questions affecting her title in the Kilauea property. *Haiku Plantations Assoc. v. Lono,* 56 Haw. 96, 102-103, 529 P.2d 1, 5 (1974); *Filipino Federation of America, Inc. v. Cubico,* 46 Haw. 353, 372, 380 P.2d 488, 498-499 (1963).

## II.

Husband's second claim raises an issue of first impression in Hawaii since the validity and effect of antenuptial agreements have not yet been decided by our appellate courts.

The validity and effect of antenuptial agreements, however, have been litigated elsewhere for over a century. Note, *For Better or for Worse. . .But Just in Case, are Antenuptial Agreements Enforceable?,* U. Ill. L. Rev. 531, 534 (1982) (hereinafter referred to as "Note"). In the past, antenuptial agreements have been invalidated on the basis that they run counter to the state's interest in (1) preserving marriage and (2) maintaining the financial security of divorced or separated persons. Note, *supra,* at 534.

Recently, however, the trend in various states has been toward upholding antenuptial agreements so long as the terms are not unconscionable and the agreement was entered into with full knowledge and without fraud, duress, or coercion. *Id.; Scherer v. Scherer,* 249 Ga. 635, 292 S.E.2d 662 (1982); *Buettner v. Buettner,* 89 Nev. 39, 505 P.2d 600 (1973); *Posner v. Posner,* 257 So.2d 530 (Fla. 1972) and 233 So.2d 381 (Fla. 1970); *Hudson v. Hudson,* 350 P.2d 596 (Okla. 1960); *Tomlin-*

---

[6] We do not decide whether or not Mrs. Snow could or should have been made a party in the family court action.

*son v. Tomlinson,* 352 N.E.2d 785 (Ind. Ct. App. 1976); *Volid v. Volid,* 6 Ill. App. 3d 386, 286 N.E.2d 42 (1972).

An antenuptial agreement is unenforceable under the statute of frauds unless it is in writing and signed by the party to be charged. Annot., 75 A.L.R.2d 633 (1961). Our statute of frauds, Hawaii Revised Statutes (HRS) section 656-1 (1976, as amended), provides in relevant part:

§656-1 Certain contracts, when actionable. No action shall be brought and maintained in any of the following cases:

*   *   *

(3) To charge any person, upon an agreement made in consideration of marriage;

*   *   *

Unless the promise, contract, or agreement, upon which the action is brought, or some memorandum or note thereof, is in writing, and is signed by the party to be charged therewith, or by some person thereunto by him in writing lawfully authorized.

In the case at bar, the alleged antenuptial agreement was undoubtedly made in consideration of marriage and fell within the statute of frauds since, by Husband's own testimony, it was made "prior and conditional to [the] marriage." As an oral agreement, however, it failed to meet the requirements of the statute of frauds.

Nevertheless, Husband argues that the alleged oral antenuptial agreement should be enforced due to the equitable doctrine of part performance. Husband contends that the parties' marriage, their move to Hawaii, their purchase of the Moloaa property, and his construction of the house demonstrate his substantial reliance on the oral antenuptial agreement and constitute sufficient part performance to take the agreement out of the statute of frauds.

The doctrine of part performance "takes the case out of the statute not because it furnishes proof of the contract, or because it makes the contract any stronger, but because it would be intolerable in equity for the owner of a tract of land

knowingly to suffer another to invest time, labor, and money in that land, upon the faith of a contract which did not exist." 73 Am. Jur. 2d *Statute of Frauds* § 400 (1974). Generally, however, courts are reluctant to circumvent the requirements of the statute. Annot., 30 A.L.R.2d 1419, 1420 (1953). Consequently, courts require the part performance to be of a character which is unequivocally referable to the alleged parol agreement and cannot admit of explanation without reference to such agreement. *Id.;* 73 Am. Jur. 2d *Statute of Frauds* §§ 405-406 (1974). The acts constituting part performance "must clearly appear to have been done in pursuance of the contract, and to result from the contract and not from some other relation." 30 A.L.R.2d at 1421-1422.

The mere act of marriage is almost universally held to be insufficient part performance and additional acts are not necessarily sufficient either. 30 A.L.R.2d at 1420; 73 Am. Jur. 2d at 136. Thus, it has been held that the construction by the husband of a house upon wife's land, to be occupied by them as a marital dwelling, cannot be considered part performance referring unequivocally to an oral agreement by the wife to convey the premises to him and take the agreement out of the statute of frauds since the husband's efforts were equally explainable as a performance of his traditional marital duty to provide housing. 73 Am. Jur. 2d at 91. Likewise, improvements to make the premises occupied by husband and wife more inhabitable and enjoyable as a home were not sufficient part performance of an oral contract for conveyance of the premises by one spouse to the other since such act was more referable to the use and possession of the premises in pursuance of the marital relation than to a contract between the spouses. *Id.*

In this case, Husband's acts do not constitute part performance referring unequivocally to the alleged antenuptial agreement since they are equally referable to his marital duties and to the use and possession of the premises as the marital dwelling. We conclude, therefore, that the part performance doctrine does not operate to take the oral antenuptial agreement out of the statute of frauds.

Even if the antenuptial agreement was enforceable, it would not be binding on the court. Section 580-47, HRS

(Supp. 1982) states in relevant part:

§ 580-47 Support orders; division of property. (a) Upon granting a divorce, the court may make such further orders as shall appear just and equitable (1) compelling the parties or either of them to provide for the support, maintenance, and education of the children of the parties; (2) compelling either party to provide for the support and maintenance of the other party; (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate; and (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate, and the attorney's fees, costs, and expenses incurred by each party by reason of the divorce. In making such further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

While it is within the trial court's discretion to consider a valid antenuptial agreement in its allocation of the parties' property, *Tomlinson,* 352 N.E.2d at 791; *Vereen v. Vereen,* 226 Ga. 500, 501, 175 S.E.2d 865, 866 (1970), such an agreement is not binding upon the court. Thus, a valid antenuptial agreement is only one of the factors to be considered by the court in making an equitable distribution of property. *Tomlinson,* 352 N.E.2d at 791; *Scherer,* 292 S.E.2d at 666; *see Lusch v. Foster,* 3 Haw. App. 175, 646 P.2d 969 (1982).

Upon examination of the record, we find that the family court did not abuse its discretion in requiring the Moloaa residence to be sold so as to reimburse Wife in cash for $18,000 of the funds which she had brought into the marriage. The distribution of property was fair and equitable as to Husband since he was awarded one-half of the proceeds from the sale of the house after costs and reimbursement to Wife and Robert Bean, as well as the entire assets and liabilities of the automobile repair business and his separate property which he brought into the marriage.

Judgment affirmed.

*Michael R. Salling* (*Lehua Fernandes Salling* with him on the brief) for appellant.
*Joseph N. Kobayashi* for appellee.