BARBARA HASHIMOTO, Plaintiff-Appellee, *v.* GLENN TAKEO HASHIMOTO, Defendant-Appellant

NO. 10856

(FC-D NO. 12027)

SEPTEMBER 8, 1986

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

In this divorce case, Glenn Takeo Hashimoto (Husband) appeals from that part of the family court's August 8, 1985 decree dealing with the division of property. We vacate that part of the decree and remand for reconsideration in light of this opinion.

The parties were married on November 10, 1973 when both were 23 years of age. Wife had a college degree in social work and Husband had one in accounting. A daughter was born on February 6, 1975. The parties separated on July 7, 1984. Wife filed a complaint for divorce on November 23, 1984.

When the complaint was filed, Wife was a financial services·representative at Honolulu Federal Savings and Loan Association, earning a gross monthly income of $1,352. Husband was an assistant vice president at Suisan Company, earning a gross monthly income of $2,194 per month plus a car allowance.

I.

Divorce cases involve up to five (5) separate categories of property net market values, as follows:

*Category 1.* The date-of-marriage net market value of all property separately owned at the date of marriage but excluding the value attributable to property that is subsequently legally gifted[1] by the owner to the

---

[1]*See Welton v. Gallagher,* 2 Haw. App. 242, 630 P.2d 1077 (1981), *aff'd;* 65 Haw. 528, 654 P.2d 1349 (1982).

other party, to both parties, or to a third party.

*Category 2.* The during-the-marriage increase in the net market value of category 1 property that the owner separately owns at the time of the divorce.

*Category 3.* The date-of-acquisition net market value of property separately acquired by gift or inheritance during the marriage but excluding the value attributable to property that is subsequently legally gifted[2] by the owner to the other party, to both parties, or to a third party.

*Category 4.* The during-the-marriage increase in the net market value of category 3 property that the owner separately owns at the time of the divorce.

*Category 5.* The time-of-divorce net market value of all property owned by one or both of the parties at the time of the divorce minus the net market values included in categories 1, 2, 3, and 4.

In *Mochida v. Mochida,* 5 Haw. App. 348, 691 P.2d 771 (1984), we generally summarized various "general rules" of equitability applicable to the division and distribution of property in divorce proceedings. In *Cassiday v. Cassiday,* 6 Haw. App. ___, 716 P.2d 1145 (1985), *aff'd in part, rev'd in part,* 68 Haw. ___, 716 P.2d 1133 (1986), we announced an additional "general rule" which, on *certiorari,* the Hawaii Supreme Court disapproved.[3]

Apparently, the label "general rule" does not adequately describe our intended meaning. Our "general rules" are not intended to be "fixed rules for determining the amount of property to be awarded to each spouse in a divorce action[.]" *Id.* 68 Haw. at ___, 716 P.2d at 1137. They are merely "uniform starting points" from which to commence equitable distribution analysis and application of statutory and case law mandates. Therefore, we hereby replace the old label of "general rule" with a new label of "uniform starting point."

The need for such "uniform starting points" is obvious. If different family court judges commence deciding in what proportion to equitably

---

[2]*See* n. 1.

[3]In *Cassiday,* our uniform starting point for the during-the-marriage net increase in the market value of nonmarital property separately owned at the time of the divorce was a 50-50 split. On *certiorari,* the Hawaii Supreme Court disapproved our 50-50 uniform starting point. It also held that 50% is the maximum that may be awarded to the nonowner-spouse. It did not specify what the uniform starting point should be.

divide the value of the property from different starting points, which could range from a 100-0 split to a 0-100 split, then their awards will be equally diverse.[4] There will be no uniformity, stability, clarity, or predictability. The ultimate decision will depend less on the facts and the law and more on who is the judge assigned to hear and decide the case. Since the standard of appellate review is the abuse of discretion standard, appellate courts will be relatively powerless to control or remedy the problem.

If family court judges are required to commence deciding in what proportion to equitably divide the value of the property from a uniform starting point, and to identify each of the factors that cause them to deviate and award a different proportion, then their decisions will be more uniform and predictable and the process of appellate review under the abuse of discretion standard will be greatly facilitated.

In *Cassiday,* the supreme court stated that the family court may award the non-owner spouse no more than 50% of the net market values under categories 2 and 4. Since the net market values under categories 2 and 4 are generated within the marriage, whereas the net market values under categories 1 and 3 are generated outside of the marriage, the non-owner spouse has no less an equitable claim to the net market values under categories 2 and 4 than under categories 1 and 3. Consequently, we conclude that categories 1, 2, 3, and 4 are limited to a maximum 50% award to the non-owner spouse.

In *Cassiday,* the supreme court also stated that "[i]t is generally accepted that each divorcing party is entitled to the date of marriage net value of his or her premarital property and the date of acquisition net value of gifts and inheritances which he or she received during the marriage. *Raupp v. Raupp,* 3 Haw. App. 602, 658 P.2d 329 (1983)." 68 Haw. at ___, 716 P.2d at 1138. It thereby confirmed that the uniform

---

[4]Suppose a case where the only facts proved are the marriage and the existence of jointly owned property. In the absence of a uniform starting point, one judge might award all of the property to the wife. Another might award it all to the husband. On appeal, both decisions would have to be affirmed as not being an abuse of discretion.

Or suppose a case where the family court judge decides on the basis of HRS § 580-47 and case law that wife is equitably entitled to a 20% adjustment in her favor. If the judge's starting point is the husband (H)-100% and the wife (W)-0%, then the award will be H-80% and W-20%. If the starting point is H-50% and W-50%, then the award will be H-30% and W-70%. If the starting point is H-0% and W-100%, then the award will be H-0% and W-100%.

starting point for dividing the net market values under categories 1 and 3 is 100% to the owner and 0% to the non-owner.

In *Cassiday,* the supreme court disapproved a 50-50 uniform starting point for dividing the net market values under categories 2 and 4. Thus, the applicable uniform starting point could be 51-49 or 100-0 or any ratio in between. Considering that the maximum that can be awarded to the non-owner spouse is 50% and the minimum is 0%, we select a 75%-25% uniform starting point for dividing the net market values under categories 2 and 4.

In our view, the uniform starting point for dividing the net market values under category 5 is 50% to the Husband and 50% to the Wife.

## II.

This case involves only three categories of property net market values as follows:

*Category 3.*

| | |
|---|---|
| Iwalani Street (rental) residence | $ 53,500[5] |

*Category 4.*

| | |
|---|---|
| Iwalani Street (rental) residence | $ 20,500 |

*Category 5.*

| | |
|---|---|
| Auahi Street (marital) residence | $ 51,261[6] |
| Wife's retirement cash value | 15,626 |
| Husband's retirement cash value | 5,271 |
| Wife's automobile | 5,000 |
| Furnishing | 16,000 |
| Wife's life insurance cash value | 1,700 |
| Husband's savings | 1,738 |
| Husband's life insurance cash value | 1,004 |
| Wife's account receivable from sister | 3,000 |
| Total | $100,600 |

---

[5]Husband's grandfather gave him one-half of the Iwalani Street residence on May 21, 1974 and the other half on February 10, 1978.

[6]The family court found that the "gross value" of the Auahi Street residence was $109,000. That figure was based on an appraisal. Using that figure, its net value was $51,261. However, the court also found that its "maximum estimated resale value" was $90,000. That figure was based on Wife's opinion. On that basis its net value was only $32,261. Since the family court ordered the residence to be sold and the net proceeds to be equally divided, the inconsistency is relatively inconsequential.

At the uniform starting points, the property net market values were divisible as follows:

| Category | Husband | | Wife | |
|---|---|---|---|---|
| 3 | $ 53,500 | (100%) | | ( 0%) |
| 4 | 15,375 | ( 75%) | $ 5,125 | (25%) |
| 5 | 50,300 | ( 50%) | $50,300 | (50%) |
| Totals | $119,175 | ( 68.3%) | $55,425 | (31.7%) |

The family court awarded the three categories of property net market values as follows:

| Category | Husband | | Wife | |
|---|---|---|---|---|
| 3 | $26,750 | (50%) | $26,750 | (50%) |
| 4 | 10,250 | (50%) | 10,250 | (50%) |
| 5 | 49,321 | (49%) | 51,279 | (51%) |
| Totals | $86,321 | (49.4%) | $88,279 | (50.6%) |

In net effect, the family court made a $31,875 or 18.3% adjustment in Wife's favor. The family court based the adjustment on the following considerations:

This [Iwalani Street] property had been the principal residence of Husband's grandparents. His grandmother had previously died, and his grandfather continued to reside in the home. Starting in May 1974 and continuing for three years, Husband and Wife lived in the Iwalani Street home with Husband's grandfather. During this time, Husband and Wife made repairs and improvements to the home using marital funds. The driveway was paved, repairs were made to the roof and gutter, vinyl siding and tile floors were added to the residence. In February 1978 Husband received a gift of the remaining one-half interest in the Iwalani Street property from his grandfather. Also that year the said residence was rented to Wife's parents at a monthly rental of $200.00. The rental income from the Iwalani Street property was deposited to a joint account of the parties. Real property taxes and insurance payments for the Iwalani Street property were paid from marital funds. Wife was responsible for maintaining records of the rental accounts for the Iwalani Street property. The parties filed joint tax returns during the entire time period of the marriage.

From the foregoing facts, this Court concludes that the parties intended to treat the Iwalani Street property as an asset of the marriage and not as the separate property of Husband. Consequently, Wife is entitled to an equal share in this asset.

The family court's finding that Husband's grandfather lived for three years with Husband and Wife in the Iwalani Street residence is clearly erroneous. He lived there with them for less than two months.

The family court's suggestion that the repairs to the roof, gutter, vinyl siding and tile floors were added to the Iwalani Street residence when Husband's grandfather lived there is also clearly erroneous. Those repairs and improvements occurred years later.

The more fundamental error, however, is an error of law. In a memorandum filed on May 28, 1985, Wife noted the different rules applied in other states with respect to the division of separate property upon divorce. She referred to three of them as the "inception of title" rule, the "source of funds" rule, and the "transmutation of property" rule. According to her, under the latter rule "a spouse's separate property may be transmuted into marital property by (1) the conduct of the parties in treating the property as a marital asset by commingling of their financial affairs, and (2) by the contribution of marital assets towards the maintenance or improvements of the separate property[.]" *See Lee v. Lee,* 410 N.E.2d 1183 (Ill. App. 1980).

It appears that the family court applied the "transmutation of property" rule in this case. In Hawaii, however, such "fixed rules" are prohibited. *Cassiday,* 68 Haw. at ___, 716 P.2d at 1137.

It appearing that errors of fact and law may have prejudically influenced the family court's decision on property division, we vacate the family court's decision and remand for reconsideration in the light of this opinion.

We express no opinion on the question of whether in this case it is within the discretion of the family court to make a $31,875 or 18.3% adjustment in Wife's favor from the uniform starting point.

Accordingly, we vacate that part of the family court's August 8, 1985 decree dealing with the division of property and remand this case to the family court for reconsideration in light of this opinion.

*Terence T. Yoshioka (Nakamoto, Yoshioka & Okamoto* of counsel) on the briefs for appellant.

*William J. Rosdil* and *Calvin J. Fukuhara (William J. Rosdil* of counsel) on the briefs for appellee.