PATRICIA ANN LEWIS, Plaintiff-Appellee, *v.* DANIEL HARBERT LEWIS, Defendant-Appellant

NO. 10820

(FC-DIVORCE NO. 129510)

DECEMBER 31, 1986

BURNS, C. J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C. J.

Defendant Daniel Harbert Lewis (Husband) appeals from the family court's July 3, 1985 "Decree Granting Absolute Divorce and Awarding Child Custody" which also awarded spousal support and divided property. Husband challenges (1) certain findings of fact made by the family court; (2) the court's conclusion that it "is not bound by the ante-nuptial agreements" entered into by Husband

and plaintiff Patricia Ann Lewis (Wife); (3) the spousal support award to Wife of $2,500 per month for 72 months: and (4) the property award to Wife of $150,000 cash. We affirm.

Wife, born on July 10, 1940, and Husband, born on November 22, 1920, commenced living together in the fall of 1968. They were married in New York City on May 23, 1970. Their daughter was born on December 12, 1972. They ceased living together on August 15, 1982. Wife filed her complaint for divorce on May 10, 1983 and the case was tried in the spring of 1985.

Wife was awarded the primary physical custody of their daughter. Husband was ordered to pay child support of $500 per month plus all of the child's medical, dental, and educational expenses.

### I.

We summarily dispose of Husband's challenge of certain of the family court's findings of fact. Upon a review of the record we conclude that none of the family court's material findings of fact are clearly erroneous. Accordingly, we affirm them.

### II.

On May 22, 1970, the day before they were married, the parties may have executed an antenuptial agreement in contemplation of divorce which we label as Agreement 1. The family court did not make a finding on that disputed question of fact. We assume that the parties executed it.

Agreement 1 states the agreement of the parties that their marriage will have no effect upon any "Last Will and Testament as may have been or may hereafter be made and executed by either[.]" It does not limit Wife's right to claim spousal support or a share of Husband's property upon divorce. Accordingly, it is irrelevant to the issues in this divorce case.

### III.

In New York, on May 22, 1970, the day before they were married in New York, the parties executed an antenuptial agreement in contemplation of divorce which we label as Agreement 2. Wife

was not represented by independent counsel. Agreement 2 provides that in the event there is a divorce after they have a child Husband will pay and Wife will accept spousal support of $1,000 per month until her death or remarriage.

The family court ordered Husband to pay Wife spousal support of $2,500 per month for 72 months or the death of either party or Wife's remarriage, whichever came first, subject to the court's further order.

## A.

Husband contends that the family court should have decided the enforceability of Agreement 2 under the law of New York, the place where it was executed and they were married. We disagree.

In our view, subject to a possible exception for situations involving forum shopping, the question of the enforceability of antenuptial agreements as to spousal support and property division upon divorce is a matter to be decided under the law of the state which has jurisdiction over the parties and where the question is being adjudicated. *See Scherer v. Scherer*, 249 Ga. 635, 292 S.E.2d 662 (1982).

In this case the record indicates that the parties have lived in Hawaii for significant periods of time since July 1979. Husband purchased a Hawaii residence in April 1982. Wife has been a resident of Hawaii since no later than July 1982. Husband has been a resident of Hawaii since no later than February 1983. On June 21, 1983 Husband filed an answer to Wife's complaint for divorce. The facts do not indicate and Husband does not contend that Hawaii's jurisdiction is the result of forum shopping.

## B.

Husband contends that the family court erred under Hawaii law when it refused to enforce Agreement 2. We disagree.

In *Rossiter v. Rossiter*, 4 Haw. App. 333, 666 P.2d 617 (1983), we stated that "[w]hile it is within the trial court's discretion to consider a valid antenuptial agreement in its allocation of the parties' property, . . . such an agreement is not binding upon the court. Thus, a valid antenuptial agreement is only one of the factors to be consid-

ered by the court in making an equitable distribution of property." *Id.* (citations omitted). We affirm that concept but amend it to state as follows: A valid antenuptial agreement in contemplation of divorce that allocates some or all of the parties' assets and liabilities or requires one party to pay spousal support to the other party is, at the request of one or both parties, binding upon the family court in a divorce action between the parties and must be decreed into effect if, but only if, the family court decides that it is equitable under HRS § 580-47 (Supp. 1984) when viewed at the time of the divorce. An agreement that is valid but inequitable under HRS § 580-47 (Supp. 1984) when viewed at the time of the divorce is merely one of the factors to be considered by the family court in making equitable decisions under HRS § 580-47 (Supp. 1984) with respect to property division or spousal support upon divorce.

Hawaii's public policy with respect to spousal support and property division upon divorce is stated in HRS § 580-47 (Supp. 1984). It requires family courts to enter "just and equitable" spousal support and property distribution decrees after considering "the respective merits of the parties,[1] the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case." (Footnote added.) It further requires that:

> [T]he court, in ordering spousal support and maintenance, shall consider the following factors:
>
> (1) Financial resources of the parties;
> (2) Ability of the party seeking support and maintenance to meet his or her needs independently;
> (3) Duration of the marriage;
> (4) Standard of living established during the marriage;
> (5) Age of the parties;
> (6) Physical and emotional condition of the parties;
> (7) Usual occupation of the parties during the marriage;

---

[1] [I]n the context in which the phrase is used, it means the merits of the respective claims of the spouses to the property sought to be divided and is pertinent only in connection with division of property. We do not think that it has any reference to personal conduct of the spouses.
*Richards v. Richards,* 44 Haw. 491, 509, 355 P.2d 188, 198 (1960).

(8) Vocational skills and employability of the party seeking support and maintenance;

(9) Needs of the parties;

(10) Custodial and child support responsibilities;

(11) Ability of the party from whom support and maintenance is sought to meet his or her own needs while meeting the needs of the party seeking support and maintenance;

(12) Other factors which measure the financial condition in which the parties will be left as the result of the action under which the determination of maintenance is made;

(13) Probable duration of the need of the party seeking support and maintenance.

The court may order support and maintenance to a party for an indefinite period or until further order of the court; provided that in the event the court determines that support and mainteance shall be ordered for a specific duration wholly or partly based on competent evidence as to the amount of time which will be required for the party seeking support and maintenance to secure adequate training, education, skills, or other qualifications necessary to qualify for appropriate employment, whether intended to qualify the party for a new occupation, update or expand existing qualification, or otherwise enable or enhance the employability of the party, the court shall order support and maintenance for a period sufficient to allow completion of the training, education, skills, or other activity, and shall allow, in addition, sufficient time for the party to secure appropriate employment.

Hawaii's public policy as stated in HRS § 580-47 takes precedence over the parties' right to enforce their antenuptial agreements.

To a great extent, a couple attempts to fix the terms of their divorce before they marry either because one is trying to prevent the other from being awarded what he or she would be awarded pursuant to an equitable divorce decree or one or both fear the consequences of an unpredictable or inequitable divorce decree. Likewise, much of the judiciary's willingness to enforce antenuptial

agreements fixing spousal support and property division upon divorce is caused by over-crowded court calendars that encourage judges to impose efficient but inequitable solutions.

Enforcement of inequitable antenuptial agreements perpetuates rather than solves these underlying problems. Consequently, we prefer to and HRS § 580-47 requires us to refuse to enforce inequitable antenuptial agreements and to deal with the underlying problems directly. We are trying to do that. *See, e.g., Hashimoto v. Hashimoto*, 6 Haw. App. \_\_\_, 725 P.2d 520 (1986).

Frankly, our review of the cases in states that purport to enforce valid antenuptial agreements fixing spousal support and property division upon divorce reveals that some theory is usually found to justify the nonenforcement of agreements that are inequitable at the time of the divorce.

The Uniform Premarital Agreement Act (1983), 9A U.L.A. 383 (Supp. 1986), which has not been enacted in Hawaii, seeks to promote "certainty" by requiring the enforcement of antenuptial agreements. However, even it allows for the "flexibility" of nonenforcement.

§ 6. Enforcement

(a) A premarital agreement is not enforceable if the party against whom enforcement is sought proves that:

(1) that party did not execute the agreement voluntarily; or

(2) the agreement was unconscionable when it was executed and, before execution of the agreement, that party:

(i) was not provided a fair and reasonable disclosure of the property or financial obligations of the other party;

(ii) did not voluntarily and expressly waive, in writing, any right to disclosure of the property or financial obligations of the other party beyond the disclosure provided; and

(iii) did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other party.

(b) If a provision of a premarital agreement modifies or eliminates spousal support and that modification or elimination

causes one party to the agreement to be eligible for support under a program of public assistance at the time of separation or marital dissolution, a court, notwithstanding the terms of the agreement, may require the other party to provide support to the extent necessary to avoid that eligibility.

(c) An issue of unconscionability of a premarital agreement shall be decided by the court as a matter of law.

Here, the family court implicitly decided that it would be a violation of HRS § 580-47 and inequitable to enforce Agreement 2. The questions of what is not and what is equitable at the time of divorce are both addressed to the family court's discretion. Consequently, the standard of appellate review of that decision is the abuse of discretion standard. *Ahlo v. Ahlo,* 1 Haw. App. 324, 619 P.2d 112 (1980).

Wife left high school at age 17. When the parties were married, Wife was Husband's secretary. She promptly terminated her employment and has not worked since. The parties lived a millionaire's standard of living during the marriage. On July 10, 1985 Husband was 64 years of age and Wife was 45 years of age. Wife "now aspires to obtain bachelor's and master's degrees and to pursue a career in public relations rather than to return to a secretarial career." Husband's "annual income is in excess of $100,000. At least $65,362 of this is from tax-exempt municipal bonds."

The family court considered the factors specified in HRS § 580-47 and implicitly decided that spousal support of $1,000 per month was an insufficient amount and that spousal support for the rest of Wife's unmarried life was for too long a term. In our view, that decision was not an abuse of discretion.

## IV.

Husband contends that the award of spousal support of $2,500 per month for 72 months is excessive both in amount and in term. Here, again, the applicable standard of appellate review is the abuse of discretion standard. *Ahlo v. Ahlo,* 1 Haw. App. 324, 619 P.2d 112 (1980). We conclude that the family court's decision as to spousal support was not an abuse of its discretion.

## V.

Husband contends that the family court abused its discretion when it awarded $150,000 worth of Husband's category 1 net market value[2] to Wife. We disagree.

When the parties married, Husband's category 1 net market value was approximately $1,765,000. At the time of trial the net worth of the property in Husband's name was not less than $1,018,500 and not more than $1,268,500. Neither Wife solely nor the parties jointly owned any valuable property at either time. Consequently, this case does not involve any value other than Husband's $1,018,500 to $1,268,500 category 1 net market value.

The uniform starting point for dividing Husband's category 1 net market value is 100% to Husband and 0% to Wife. *Hashimoto, supra.* The maximum percentage of Husband's category 1 net market value that can be awarded to Wife is 50%. *Id.* Here, the family court awarded not less than 11.8% of it and not more than 14.7% of it to Wife. Under the circumstances of this case we conclude that the family court's decision was not an abuse of its discretion.

## VI.

Wife contends that Husband's appeal is frivolous. We disagree. It was not, prior to this opinion, manifestly and palpably without merit. *See Kawaihae v. Hawaiian Insurance Companies,* 1 Haw. App. 355, 619 P.2d 1086 (1980).

Affirmed.

*R. Steven Geshell* for defendant-appellant.

*Maurice Sapienza* for plaintiff-appellee.

---

[2] *Category 1.* The date-of-marriage net market value of all property separately owned at the date of marriage but excluding the value attributable to property that is subsequently legally gifted by the owner to the other party, to both parties, or to a third party.

*Hashimoto v. Hashimoto,* 6 Haw. App. ____, ____ 725 P.2d 520, 522 (1986) (footnote omitted).