THOMAS VYN REESE, SR., Plaintiff-Appellee, *v.* BEVERLY JEAN REESE, Defendant-Appellant

NO. 10740

(FC-D NO. 9879(2))

MARCH 6, 1987

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C. J.

In this divorce case between defendant Beverly Jean Reese (Wife) and plaintiff Thomas Vyn Reese, Sr. (Husband), Wife appeals portions of the family court's May 23, 1985 decree of divorce. We vacate the property division portion with instructions and affirm all other portions of the decree.

In her appeal Wife contends that the family court reversibly erred in numerous instances. Upon a thorough review of the record, we disagree with and summarily dismiss most of her points. In the one instance where the family court entered a clearly erroneous material finding of fact, we hereinafter specifically correct it. We will discuss only Wife's point that the family court's division of property constitutes an abuse of its discretion.

When the parties were married in California on January 6, 1974, Husband was age 49 and Wife was age 43. For many years prior to their marriage, Husband had been Wife's family physician. In May 1985 Husband was age 61 and Wife was age 55.

The family court found in relevant part as follows:

15. Prior to the parties' first separation [from February 29, 1980 to June 30, 1981], the Husband was the sole source of income for the family and not only supported the Wife, but also supported in part the Wife's adult children from her prior marriage.

* * *

17. Throughout the marriage until the first separation, the Wife operated a modeling-charm school, but was never financially successful in the venture. Several months prior to the parties['] final separation, the Wife opened a modeling-charm school which school and modeling agency was still in business at the time of the trial. Other than the beauty business, the Wife

has made no other effort to generate income for herself since the separation. At the time of the marriage, the Wife was supporting herself with child support payments from her first husband.

In his Income and Expense Statement dated January 3, 1984 Husband reported that his gross monthly income was $3,000 per month. Pendente lite, the family court awarded Wife spousal support of $900 per month from January 20, 1984 to July 31, 1985, and exclusive use and occupancy of the marital residence free and clear of the mortgage. In the decree of divorce, the family court awarded Wife spousal support of $1,200 per month for 12 months commencing August 1985, $1,000 per month for 12 months commencing August 1986, $800 per month for 12 months commencing August 1987 and $400 per month for 12 months commencing August 1988. Wife does not challenge the family court's award of spousal support.

The family court denied Wife's request for an award of attorney fees and costs. We find no merit in Wife's appeal of the denial.

This case was tried in April 1985 and decided on May 23, 1985. Thus, the family court's decision preceded this court's opinion in *Cassiday v. Cassiday*, 6 Haw. App. ____, 716 P.2d 1145 (1985), *aff'd in part, rev'd in part,* 68 Haw. ____, 716 P.2d 1133 (1986), by one day. In our view, however, the family court's decision must be reviewed under all of the relevant case law heretofore published, such as *Cassiday v. Cassiday, supra, Hashimoto v. Hashimoto,* 6 Haw. App. ____, 725 P.2d 520 (1986), and *Lewis v. Lewis,* 6 Haw. App. ____ (No. 10820, December 31, 1986), *cert. granted,* 68 Haw. ____ (No. 10820, January 30, 1987).

In *Hashimoto* we defined five separate categories of property net market values.[1] We hereby amend *Hashimoto's* definition of categories 2, 4, and 5 as follows:

---

[1] In *Hashimoto* we stated in relevant part as follows:

*Category 1.* The date-of-marriage net market value of all property separately owned at the date of marriage but excluding the value attributable to property that is subsequently legally gifted by the owner to the other party, to both parties, or to a third party.

*Category 2.* The during-the-marriage increase in the net market value of category 1 property that the owner separately owns at the time of the divorce.

*Category 2.* The during-the-marriage increase in the net market value of all property whose value at the date of marriage is included in category 1 and that the owner separately owns continuously from the date of marriage to the time of divorce.

*Category 4.* The during-the-marriage increase in the net market value of all property whose value at the date of acquisition during the marriage is included in category 3 and that the owner separately owns continously from the date of acquisition to the time of divorce.

*Category 5.* The time-of-divorce net market value of all property owned by one or both of the parties at the time of divorce minus the total of the net market values included in categories 1, 2, 3, and 4.

Categorized pursuant to the above categories, the value of the property of the parties at the time of divorce was approximately as follows:

| Category | Husband | Wife | Joint |
|---|---|---|---|
| 1 | $307,200.00 | -0- | |
| 3 | 194,798.00 | | |
| 2 & 4 | -0- | -0- | -0- |
| 5 | 482,570.00 | $9,721.00 | $31,800.00 |
| Total | $984,568.00[2] | $9,721.00 | $31,800.00[3][4] |

---

*Category 3.* The date-of-acquisition net market value of property separately acquired by gift or inheritance during the marriage but excluding the value attributable to property that is subsequently legally gifted by the owner to the other party, to both parties, or to a third party.

*Category 4.* The during-the-marriage increase in the net market value of category 3 property that the owner separately owns at the time of the divorce.

*Category 5.* The time-of-divorce net market value of all property owned by one or both of the parties at the time of the divorce minus the net market values included in categories 1, 2, 3, and 4.

6 Haw. App. at ____, 725 P.2d at 522.

[2] The family court found the value of one of the assets included in this total to be "$650,000 - $750,000." The family court should have been more decisive. We split the difference.

[3] The family court found the value of one of the assets included in this category to be "$3,000 - $5,000" and another to be $2,000 -.$3,000." The family court should have been more decisive. We split the difference.

[4] The family court assigned a value of $10,000 to one of the assets included in this total — namely, the INTERNATIONAL METHOD OF MODEL TRAINING (IMMT) franchise. The IMMT franchise is probably worth more than $1,000 but

No part of the net market value of a property is a category 2 value unless the net market value of that property at the time of divorce exceeds its net market value at the date of marriage. Likewise, no part of the net market value of a property is a category 4 value unless the net market value of that property at the time of divorce exceeds its net market value at the date of acquisition during marriage.

If specific property has been separately owned continuously from the date of marriage to the time of divorce and the net market value of that property at the time of divorce is no greater than its net market value at the date of marriage, then its value includable in category 1 is its net market value at the time of divorce. Likewise, if a specific property has been separately owned continously from the date of acquisition during marriage to the time of divorce and the net market value of that property at the time of divorce is no greater than its net market value at the date of its acquisition during marriage, then its value includable in category 3 is its net market value at the time of divorce.

It does not appear that this case involves any category 2 or category 4 net market values. Here, most of the specific property Husband separately owned at the time of divorce was not owned by Husband at the date of marriage or at the date of its acquisition during marriage and the property that was so owned does not appear to have increased in value during the relevant period.

If the applicable uniform starting points were the appropriate ending points in this case, the values would have been awarded as follows:

| Category | Husband | | Wife | |
|---|---|---|---|---|
| 1 | $307,200.00 | (100%) | | (0%) |
| 2 | -0- | | -0- | |
| 3 | 194,798.00 | (100%) | | (0%) |
| 4 | -0- | | -0- | |
| 5 | 262,045.50 | (50%) | $262,045.50 | (50%) |
| Total | $764,043.50 | (74.5%) | $262,045.50 | (25.5%) |

---

there is no evidence in the record of that fact. Evidently, the participants in the proceedings below were unaware of the cases in West's Pacific Digest under *Evidence* Key 474(16) . Thus, our total is $9,000 less than the family court's amount.

The family court actually awarded the values as follows:

| Category | Husband | | Wife | |
|----------|---------|-----|------|-----|
| 1 | $307,200.00 | (100%) | | (0%) |
| 3 | 194,798.00 | (100%) | | (0%) |
| 5 | 457,570.00 | (87.3%) | $66,521.00 | (12.7%) |
| Total | $959,568.00 | (93.5%) | $66,521.00 | (6.5%) |

In other words, the family court awarded Wife $195,524.50 less than she would have received under the applicable uniform starting points.

In addition to the usual relevant considerations, two special factors influenced the family court's decision.

First, based on substantial evidence, the family court found and concluded in relevant part as follows:

### FINDINGS OF FACT

1. The parties were married in Bakersfield, California on January 6, 1974. It was the second marriage for the Wife and the third marriage for the Husband. At the time of the marriage the Wife had four children, at least three of which were still living with the Wife. The Husband had three children from his first marriage, one of whom was still dependent on the Husband for financial support.

2. Prior to his second marriage, the Husband entered into an antenuptial agreement with his second wife-to-be. The Husband's purpose in requiring his second wife to execute that agreement prior to the marriage was to preserve his separate estate and any growth thereof for his three children from his first marriage. During the Husband's courtship of the Wife (Defendant), the antenuptial agreement from the Husband's second marriage was the primary issue in the Husband's second divorce litigation. Prior to their marriage, the Husband often discussed this litigation with the Defendant.

3. Several days prior to the subject marriage, the parties executed an antenuptial agreement, Plaintiff's Exhibit No. 2. It Provides, in part, that any property of either party owned by that party at the time of the marriage or received by a party through inheritance or the income and/or enhanced value of such property shall remain the "separate" property of the re-

spective party (Paragraph No. 5). The Agreement further provided that each party forever waived any rights he or she might have in the separate property of the other (Paragraph No. 9).

\* \* \*

9. From all of the evidence adduced at the trial, the Court finds that the Wife executed the Antenuptial Agreement voluntarily and knowingly without undue coercion or influence.

\* \* \*

### CONCLUSIONS OF LAW

1. The Court concludes that the Antenuptial Agreement executed by the parties herein prior to their marriage was executed by the Defendant with full knowledge as to its contents and without fraud, duress or coercion by either party.

The family court's conclusion that the antenuptial agreement in this case is valid is right. However, the family court abused its discretion when it enforced the property division terms of the antenuptial agreement. In our view, those terms are inequitable under HRS § 580-47 (Supp. 1984)[5] when viewed at the time of the divorce. Therefore, the antenuptial agreement is merely one of the factors to be considered by the family court in making equitable decisions under HRS § 580-47 with respect to property division. *See Lewis, supra.*

Second, based on substantial evidence, the family court found in relevant part as follows:

---

[5] HRS § 580-47 states in relevant part:

Support orders; division of property. (a) Upon granting a divorce, . . . the court may make such further orders as shall appear just and equitable . . . (3) finally dividing and distributing the estate of the parties, real, personal, or mixed, whether community, joint, or separate; and (4) allocating, as between the parties, the responsibility for the payment of the debts of the parties whether community, joint, or separate . . . . In making such further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

*FINDINGS OF FACT*

\* \* \*

10. Throughout the marriage, the parties always took steps to keep their respective "separate" estates separate from the community/marital estate.

\* \* \*

14. During the marriage, the Husband took successful steps not to commingle his separate property with the community/marital property and the property shown in Exhibit "B" [Husband's categories 1, 2, 3, 4 property] is a direct result of the appreciation, income and exchanges of the Husband's premarital estate and inheritance. The value of the estate shown in Exhibit "B" was not enhanced during the marriage by the Husband's earnings from his medical practice, the Wife's separate estate nor the Wife's earning through payment of taxes or otherwise.

The family court permissibly considered this course of dealing between the parties when dividing the property of the parties in this case. *See Au-Hoy v. Au-Hoy*, 60 Haw. 354, 590 P.2d 80 (1979).

On the other hand, the family court did not give any consideration to the fact that $524,091 (51%) of the total $1,026,089 value in this case is what we now refer to as a category 5 value.

Upon consideration of all of the relevant circumstances of this case, we hold that any division of the property net market values in this case that is less advantageous to Wife than the following division is an abuse of the family court's discretion:

| Category | Husband | | Wife | |
|---|---|---|---|---|
| 1 | $307,200.00 | (100%) | | (0%) |
| 3 | 194,798.00 | (100%) | | (0%) |
| 5 | 399,091.00 | (76.1%) | $125,000.00 | (23.9%) |
| Total | $901,089.00 | (87.8%) | $125,000.00 | (12.2%) |

Accordingly, we vacate the property division portion of the May 23, 1985 decree, affirm all other portions, and remand for further proceedings consistent with this opinion.

*Edward F. Mason* on the briefs for defendant-appellant.

*Steven R. Scott (Scott and Ohigashi* of counsel) on the brief for plaintiff-appellee.