**\*\*\* FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCWC-17-0000451
27-OCT-2021
11:52 AM
Dkt. 11 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI‘I

---o0o---

_____

NICOLETA JACOBY,
Petitioner/Plaintiff-Appellee,

vs.

BENNETT JACOBY,
Respondent/Defendant-Appellant.

_____

SCWC-17-0000451

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000451 and CAAP-19-0000664; FC-D NO. 08-1-281K)

OCTOBER 27, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, WILSON, AND EDDINS, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.   Introduction

This consolidated appeal arises from the rulings of the

Family Court of the Third Circuit ("family court") on remand

from a published opinion of the Intermediate Court of Appeals ("ICA").[1]

The family court entered a divorce decree on July 5, 2011, after a November 2009 divorce trial between petitioner Nicoleta Jacoby ("Nicoleta") and respondent Bennett Jacoby ("Bennett").[2] In relevant part, the family court awarded Nicoleta indeterminate spousal support of $4,000 per month. The family court calculated the spousal support award partly based on a finding that Bennett's total gross monthly income was $29,402, which included $9,064 in investment income. The family court had, however, also awarded half of the assets generating the subject investment income to Nicoleta as part of the property division.

In a 2014 published opinion, the ICA affirmed in part and vacated in part the July 5, 2011 divorce decree and remanded several issues, which included the issue of spousal support, to the family court for further proceedings. Jacoby v. Jacoby (Jacoby I), 134 Hawai'i 431, 341 P.3d 1231 (App. 2014), as corrected (Mar. 24, 2015).[3] In relevant part, the ICA concluded

---

[1]    The Honorable Aley K. Auna, Jr., presided over this remanded case. Judge Auna also presided over the 2009 divorce proceedings.

[2]    Because the parties share the same surname, their first names are used for purposes of clarity. No disrespect is intended.

[3]    The opinion, authored by Associate Judge Katherine G. Leonard, was joined in by Chief Judge Craig H. Nakamura and then Associate Judge Lisa M. Ginoza.

2

that the family court erroneously included the entire investment income in Bennett's income instead of allocating half to Nicoleta because the family court had awarded half of the assets generating the income to Nicoleta.

On remand, the family court recalculated the income of the parties; Nicoleta's monthly income was recalculated as $4,532, half of $9,064, and Bennett's monthly income was recalculated as $24,870. The family court also reaffirmed Nicoleta's reasonable monthly expenses as $6,237. The family court concluded, however, that "it would be just and equitable to continue the award of permanent spousal support of $4,000 per month." Nicoleta's resulting total monthly income from the investment income and spousal support was $8,532, exceeding her $6,237 monthly reasonable expenses.

Bennett appealed, arguing in relevant part that the family court abused its discretion and erred as a matter of law in awarding spousal support to Nicoleta that exceeded her $6,237 monthly reasonable expenses.

In its April 20, 2021 summary disposition order ("SDO"), the ICA ruled in favor of Bennett. See Jacoby v. Jacoby (Jacoby II), Nos. CAAP-17-0000451 and CAAP-19-0000664, 2021 WL 1554197 (App. Apr. 20, 2021) (SDO). The ICA did so, however, on the basis that in Jacoby I, it had remanded for the family court to redetermine spousal support in light of the corrected income

3

assumptions for investment income. The ICA ruled the family court therefore erred by engaging in a new just and equitable determination on remand, as it was not a part of the remand order in Jacoby I.

On certiorari, Nicoleta argues the ICA erred by ruling the family court was precluded on remand from engaging in a new just and equitable determination for spousal support.

We hold the ICA erred by setting aside the amended spousal support award order on the basis that the family court was prohibited from doing so on remand because Hawai'i Revised Statutes ("HRS") § 580-47(a) (2006 & Supp. 2011) provides family courts with continuing jurisdiction to address issues of spousal support. We also hold, however, that the family court erred, on remand, by maintaining spousal support at $4,000 a month because it awarded more spousal support than it determined was required to satisfy Nicoleta's demonstrated needs. We also hold, however, that the family court abused its discretion by not holding a hearing on remand to determine whether the spousal support amount should have been amended because Nicoleta showed good cause for a redetermination.

Hence, we vacate in part and affirm in part the ICA's May 24, 2021 judgment on appeal, and we remand this case to the family court for further proceedings consistent with this opinion.

4

## II. Background[4]

### A. Factual background

Nicoleta was born in Romania in 1969. She suffered various medical ailments in her youth. In November 1990, Nicoleta moved to the United States. Nicoleta met Bennett, a periodontist, in California in May 1992 and they married on June 12, 1993. Nicoleta worked at Bennett's periodontal clinic for some time without pay. Their son was born in June 1995 and their daughter in January 1997.

Nicoleta continued to suffer from numerous medical ailments throughout her life, which impacted her employability. She was diagnosed with multiple sclerosis ("MS") in late 1997. The Jacobys moved to Hawai'i in May 1998 and they purchased a house in August 1998. Nicoleta continued to have MS flare-ups, for which she consulted specialists in Hawai'i and California. By the time of trial, she had also developed optic neuritis, brain hemorrhaging, carpal tunnel syndrome, and left shoulder problems.

Thus, for the majority of the marriage, Bennett provided sole financial support for the family. His income included funds from a periodontal endoscope he developed and had patented in 1993. Bennett developed myofascial pain dysfunction syndrome

---

[4] Only the background relevant to the issues on certiorari is discussed. See Jacoby I for further details not relevant to the issues on certiorari.

after a 1996 surfing accident and began receiving disability benefits. He was able, however, to continue working part-time as a periodontist.

**B.    Procedural background**

**1.    Pre-Jacoby I proceedings**

On December 9, 2008, Nicoleta filed for divorce. The divorce trial was held on November 12, 13, 19, and 27, 2009.

On April 14, 2011, the family court filed its findings of fact and conclusions of law ("divorce trial order"). In relevant part, the family court found (1) Nicoleta suffered numerous medical ailments; (2) Nicoleta was "medically unable to pursue any gainful employment as a result of the multiple and serious chronic medical conditions from which she has suffered since the age of 16 years"; (3) Nicoleta's $3,327 household and transportation expenses, excluding her automobile loan payments, and her $2,910 personal monthly expenses, including medical and dental, for a total of $6,237 in monthly expenses, were reasonable; (4) Bennett's total gross monthly income was $29,402, which included: (a) $16,343 per month from partial, tax free disability payments; (b) $9,064 per month from the investment income; (c) $1,267 per month from royalty income; and (d) $2,728 per month from his part-time periodontist work; (5) Bennett, for the majority of the sixteen-year marriage, was the sole financial support for the family and had the greater

6

earning capacity; and (6) the parties had a high standard of living.

The family court concluded "it would be just and equitable to award [Nicoleta] permanent spousal support of $4,000 per month" that would "terminate upon the death of either party or upon the remarriage or cohabitation of [Nicoleta]." The family court calculated the spousal support award based, inter alia, on its finding that Bennett's total gross monthly income before deductions for support awards and medical premiums was $29,402, which included the entire investment income.[5]

On July 5, 2011, the family court filed its Decree Granting Absolute Divorce and Awarding Child Custody ("divorce decree"), which dissolved the parties' marriage and incorporated the divorce trial order. On August 3, 2011, Bennett appealed the divorce trial order and divorce decree to the ICA, arguing in relevant part that the family court erred by awarding Nicoleta $4,000 monthly spousal support. On August 17, 2011, Nicoleta cross-appealed from the divorce decree.

---

[5]     Regarding property division, the family court prepared an allocation chart of the $3,564,440 marital estate. Of this amount, the assets producing the $9,064 monthly investment income had a total value of $2,691,452. The family court awarded the parties half each, or $1,345,726 each. Further, although based on marital partnership principles, Bennett would have been awarded $2,027,403, the family court awarded marital assets of $1,438,726 to him. Likewise, although Nicoleta would have received $1,537,037, the family court allocated $2,125,714 to her. Although Bennett would then be entitled to a $588,677 equalization payment from Nicoleta, the family court determined there were sufficient "valid and relevant considerations" to deviate from marital partnership principles and waived Nicoleta's equalization payment.

2.  **Jacoby I**

In a 2014 published opinion, the ICA ruled in relevant part that the family court did not err by awarding Nicoleta permanent spousal support, and that Bennett did not meet his burden on appeal to demonstrate the family court erred in determining the amount of Nicoleta's reasonable monthly expenses.  Jacoby I, 134 Hawai'i at 446, 341 P.3d at 1246.  The ICA noted the family court had found (1) Nicoleta suffered from numerous ailments since the age of sixteen, citing to the family court's findings in its divorce trial order; (2) as a result of these ailments, Nicoleta was "medically unable to pursue any gainful employment"; and (3) Bennett had been the sole financial support for the family for the majority of the parties' sixteen-year marriage.  Id.

The ICA concluded:

> However, as Bennett argues, the Family Court included the entire amount of the Investment Income ($9,064) as part of Bennett's income and none of it as part of Nicoleta's income, even though the Family Court awarded 50% of the Accounts, the underlying assets generating this Investment Income, to Nicoleta.  The Family Court clearly erred in this regard and, therefore, utilized erroneous income assumptions for both parties when it determined that Nicoleta was entitled to $4,000 per month in spousal support.
>
> . . . .
>
> The Family Court's findings show that it carefully considered all of the factors provided in HRS § 580-47(a) when it determined that Nicoleta was entitled to spousal support.  However, the Family Court abused its discretion in ordering Bennett to pay $4,000 per month in spousal support to Nicoleta based on the erroneous allocation of the Investment Income generated by the parties' Accounts, which were divided equally between them.

Id.

8

The ICA remanded to the family court for further proceedings consistent with its opinion. 134 Hawai'i at 458, 341 P.3d at 1258. No certiorari application was filed.

### 3. Family court proceedings on remand

On May 14, 2015, Nicoleta filed a memorandum to request an evidentiary hearing on, inter alia, the spousal support issue. She asserted that the spousal support issue could not be resolved "by just some recalculations based on the ICA's assumptions." She argued that circumstances had changed since the initial calculation of spousal support. Specifically, Nicoleta contended that since the July 5, 2011 divorce decree, she had not received the investment income presumed to be allocated to her, and that Bennett had been receiving the investment income, which was not a circumstance contemplated by the family court or ICA. Nicoleta contended that although the ICA assumed the underlying assets generating the investment income were divided equally, they were not; thus, an evidentiary hearing was necessary to determine who received what share of the investment income to accurately determine how much, if any, of a recalculation was necessary. Nicoleta also argued it would be manifestly unjust to attribute income to her that she never received, and to reduce the spousal support obligation by not attributing the income to Bennett.

In response, Bennett argued Jacoby I did not instruct or suggest the family court should hold an evidentiary hearing to determine what investment income the parties actually received during the years since the divorce decree; the family court's duty on remand, Bennett contended, was simply to correct its error by issuing an amended divorce decree "as it would have read if the error had not been made."  Bennett contended Nicoleta's argument that he received her portion of the investment income was "simply not a proper consideration even if it were true."  Bennett argued that Nicoleta never brought a motion to enforce or otherwise objected that she did not receive half of the assets underlying the investment income.  According to Bennett, if Nicoleta was unable to generate the same level of investment income, her remedy would have been a motion to modify the support orders during the pendency of the appeal, which was an issue separate from the family court's obligation to correct its errors in the divorce decree.  Bennett asserted that Jacoby I ruled on the basis of the record only and its instructions on remand were based on the record; opening the record to consider new evidence would essentially amount to a new trial and would invite a possible new, costly, and time-consuming appeal.

In a June 29, 2015 order, the family court stated it would not conduct an evidentiary hearing but ordered the parties to

file, inter alia, arguments based upon the evidence presented at trial and Jacoby I.

In her July 27, 2015 memorandum, Nicoleta argued that the investment income should also have been divided equally, as the ICA noted the family court equally allocated the assets generating the investment income.  To be consistent with Jacoby I, Nicoleta contended, the parties' monthly income should reflect the allocation of the investment income.

Nicoleta stated that, as noted in Jacoby I, the $4,000 monthly spousal support was based only in part on Bennett's $29,402 monthly income, and that once the family court allocated half of the investment income to each party, it should still perform an HRS § 580-47(a) analysis.  Nicoleta maintained that, in addition to the reasons the family court considered in awarding spousal support, given her numerous health problems, her expenses would "undoubtedly" increase as her medical conditions worsened over time.  Thus, Nicoleta asserted that even after considering the HRS § 580-47(a) factors and the allocation of the investment income to her, the family court could not reasonably find that Nicoleta was able to meet her basic needs and maintain her standard of living without spousal support.

Nicoleta argued that reallocation of the investment income did not automatically require a downward modification of the

11

spousal support award. She maintained her expenses would inevitably increase and even if the $4,000 spousal support was awarded to her, there was still a large income disparity between the parties. Nicoleta asserted that, accordingly, the family court should reconsider the HRS § 580-47(a) factors and reaffirm the $4,000 monthly spousal support award. Doing so would also prevent manifest injustice, Nicoleta stated, because Bennett's counsel had suggested he might attempt to recoup "overpayment" of spousal support in a later motion.

In response, Bennett maintained that the mandate in Jacoby I directed the family court to revise its findings of fact and conclusions of law, which would now require Nicoleta to reimburse him for overpayment of the spousal support. Bennett also maintained that the family court could not consider "new evidence."

On February 8, 2016, the family court filed its Order on Issues on Remand ("remand order"). The family court found and concluded as to spousal support as follows:

> 1. Wife's household, transportation, and personal monthly expenses total $6,237 (Decree, Findings of Fact 108 and 109; hereinafter "FOF").
> 2. Wife's income is based upon spousal support and $290 payment made by Husband for her medical insurance premiums (FOF 122).
> 3. Accrued interest of bonds and Certificates of Deposit is $9,064 per month (FOF 114).
> 4. Pursuant to the Decree, the investment accounts that generated the $9,06[4] monthly income were divided equally. Accordingly, each party is to receive $4,532 per month ($9,064 ÷ 2) in income generated from these investment accounts. The Court did not take this into account when it issued its Decree.

12

> 5. Child support is not considered income for the purposes of calculating spousal support.
> 6. Husband was ordered to pay $290 per month towards Wife's medical insurance premium (FOF 122).
> 7. Husband's total monthly income, excluding the deduction of Wife's medical insurance premium, is recalculated to $24,870 ($29,402 - $4,532; see FOF 117).
> 8. Wife's total monthly income, excluding the medical insurance premium, is recalculated to $4,532.
> 9. The parties continue to have a large disparity in income; a little over $20,300 difference.
> 10. All FOFs made in the Decree inconsistent [sic] with the findings herein continue to be relevant to the Court's decision regarding spousal support.
> 11. Under the circumstances of this case, it would be just and equitable to continue the award of permanent spousal support of $4,000 per month.

On May 2, 2017, the family court filed its Amended Decree Granting Absolute Divorce and Awarding Child Custody ("amended divorce decree"), which incorporated the remand order.

On June 1, 2017, Bennett appealed from the remand order and amended divorce decree, initiating CAAP-17-0000451.

On March 20, 2019, Nicoleta filed a motion to enforce, in relevant part, the divorce decree and amended divorce decree; to establish the manner of spousal support payments; and for an order directing Bennett to pay her attorney fees and costs. On August 28, 2019, the family court[6] entered its Order and Judgment in Favor of Plaintiff Nicoleta Jacoby and Against Defendant Bennett Jacoby for Attorney's Fees and Costs ("attorney fees order"). On September 20, 2019, the family court entered its Order Following Hearing on Plaintiff's March 20, 2019 Motion to Enforce July 5, 2011 Decree and May 2, 2017 Amended Decree, for

---

[6]     The Honorable Wendy M. DeWeese presided.

Order Establishing Manner of Alimony Payments to Plaintiff, and for Order Directing Defendant to Pay Plaintiff's Attorney's Fees and Costs ("enforcement order").

On September 27, 2019, Bennett appealed from the August 28, 2019 attorney fees order and the September 20, 2019 enforcement order, initiating CAAP-19-0000664.

### 4.    ICA proceedings

The ICA consolidated CAAP-17-0000451 and CAAP-19-0000664 under CAAP-17-0000451.[7]

On appeal, Bennett argued in relevant part that the family court abused its discretion and erred as a matter of law in awarding spousal support to Nicoleta in an amount that grossly exceeded the family court's calculation of her reasonable needs in its remand order.[8]  He argued that if Nicoleta's "reasonable needs were met with a $4,000 award of monthly spousal support prior to considering and accounting for that $4,532 in dividend

---

[7]    In CAAP-19-0000664, Bennett argued the family court (1) abused its discretion by awarding Nicoleta attorney fees without inquiring into the parties' current economic condition; (2) abused its discretion in entering certain FOFs relating to Nicoleta's medical issues when no evidence was presented during the motion to enforce hearing; (3) erred by awarding attorney fees to Nicoleta because "this was not an enforcement action on which [Nicoleta] prevailed;" and (4) abused its discretion by awarding attorney fees to Nicoleta because the award was excessive, not fair and reasonable, and made without an evidentiary hearing.  These issues are not relevant on certiorari and therefore not further discussed.

[8]    Bennett also argued the family court erred as a matter of law in (1) allocating the values of the parties' respective bank and checking and savings accounts to them twice; and (2) failing to recalculate post-judgment interest based on the corrected allocation of the values of the parties' accounts.  These issues are not relevant on certiorari and therefore not further discussed.

and interest income, she did not continue to need $4,000 per month to meet her reasonable needs, once that $4,532 in income was properly accounted for."  Nicoleta responded that the family court properly continued the $4,000 monthly spousal support given her needs, health conditions, Bennett's ability to pay, and the significant disparity in the parties' incomes.

The ICA concluded Bennett's argument had merit.  Jacoby II, SDO at 3.  The ICA stated that the family court, on remand, although having applied the corrected income assumptions, still arrived at the same $4,000 monthly spousal support level after engaging in a new just and equitable determination, which the ICA held was not part of the orders on remand.  Jacoby II, SDO at 3-4.  The ICA vacated the spousal support award and remanded to the family court to recalculate the award using the corrected investment income figure of $4,532 for each party, taking into account Nicoleta's $6,237 reasonable monthly expenses that were affirmed in Jacoby I.[9]  Jacoby II, SDO at 3, 13.

The ICA filed its judgment on appeal on May 24, 2021.[10]

_____

[9]     See Jacoby II, SDO at 6-13, for the ICA's other rulings not relevant on certiorari.

[10]    The judgment on appeal was signed by Associate Judge Karen T. Nakasone. Associate Judge Leonard, who authored Jacoby I, was on the panel for Jacoby II, along with now Chief Judge Ginoza, who was also on Jacoby I.

15

### 5. Supreme court proceedings

On certiorari, Nicoleta argues the ICA erred because Jacoby I did not prohibit the family court, on remand, from again considering the HRS § 580-47(a) factors. Nicoleta asserts Jacoby II "contradicts the language, spirit, and intent of HRS § 580-47 in all respects." Nicoleta points out that there is no mathematical formula or model to use in calculating spousal support; the application of simple math does not ensure a spouse's needs will be met, which is why the family court is required to consider the HRS § 580-47(a) factors. As such, Nicoleta asserts that even if the family court factored in the investment income, the family court could still have concluded that she was entitled to $4,000 monthly spousal support based on its consideration of the HRS § 580-47(a) factors.

Nicoleta argues that by concluding the family court erred by engaging in a new just and equitable determination and by requiring the family court to apply simple math to the determination of spousal support, Jacoby II undermined the family court's discretion to determine spousal support. Nicoleta asserts that if Jacoby II is left to stand, it would negatively impact her ability to support herself, as Jacoby II appeared to dictate that the spousal support amount should have been $1,705 per month (Nicoleta's reasonable monthly expenses of $6,237 – investment income of $4,532 = $1,705). Nicoleta

16

asserts that Bennett could therefore demand that she reimburse him the amount he paid her over $1,705 each month for the past ten years, which, if ordered by the family court, would be financially disastrous for her.

### III. Standards of review

#### A. Family court decisions

> Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decision on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Brutsch v. Brutsch, 139 Hawai'i 373, 381, 390 P.3d 1260, 1268 (2017).

> It is well established that a family court abuses its discretion where "(1) the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant; (2) the family court failed to exercise its equitable discretion; or (3) the family court's decision clearly exceeds the bounds of reason."

Id. (emphasis omitted).

#### B. Family court's findings of fact and conclusions of law

This courts reviews the family court's findings of fact under the "clearly erroneous" standard. W.N. v. S.M., 143 Hawai'i 128, 133, 424 P.3d 483, 488 (2018) (citation omitted).

> A [finding of fact] is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

17

Id. (citation omitted).  On appeal, the family court's conclusions of law are reviewed de novo under the right/wrong standard.  Id.

## IV.  Discussion

**A.  The ICA erred by ruling Jacoby I prohibited the family court from reconsidering the HRS § 580-47(a) factors on remand to determine a just and equitable spousal support amount**

HRS § 580-47(a) provides:

> (a) Upon granting a divorce, or thereafter if, in addition to the powers granted in subsections (c) and (d), jurisdiction of those matters is reserved under the decree by agreement of both parties or by order of court after finding that good cause exists, the court may make any further orders as shall appear just and equitable . . . (2) compelling either party to provide for the support and maintenance of the other party . . . .  In making these further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, the concealment of or failure to disclose income or an asset, or violation of a restraining order issued under section 580-10(a) or (b), if any, by either party, and all other circumstances of the case.  . . . .
>
> In addition to any other relevant factors considered, the court, in ordering spousal support and maintenance, shall consider the following factors:
>
> (1) Financial resources of the parties;
> (2) Ability of the party seeking support and maintenance to meet his or her needs independently;
> (3) Duration of the marriage;
> (4) Standard of living established during the marriage;
> (5) Age of the parties;
> (6) Physical and emotional condition of the parties;
> (7) Usual occupation of the parties during the marriage;
> (8) Vocational skills and employability of the party seeking support and maintenance;
> (9) Needs of the parties;
> (10) Custodial and child support responsibilities;
> (11) Ability of the party from whom support and maintenance is sought to meet his or her own needs

18

> while meeting the needs of the party seeking support and maintenance;
> (12) Other factors which measure the financial condition in which the parties will be left as the result of the action under which the determination of maintenance is made; and
> (13) Probable duration of the need of the party seeking support and maintenance.
>
> <u>The court may order support and maintenance to a party for an indefinite period or until further order of the court</u>; provided that in the event the court determines that support and maintenance shall be ordered for a specific duration wholly or partly based on competent evidence as to the amount of time which will be required for the party seeking support and maintenance to secure adequate training, education, skills, or other qualifications necessary to qualify for appropriate employment, whether intended to qualify the party for a new occupation, update or expand existing qualification, or otherwise enable or enhance the employability of the party, the court shall order support and maintenance for a period sufficient to allow completion of the training, education, skills, or other activity, and shall allow, in addition, sufficient time for the party to secure appropriate employment.

(Emphases added.)

Thus, the family court has wide discretion when making its decision regarding spousal support. See <u>Brutsch</u>, 139 Hawai'i at 381, 390 P.3d at 1268. "When deciding in a divorce case whether one party must pay periodic support to the other, for how long, and how much, the family court must consider all of the factors enumerated in HRS § 580-47(a)." <u>Hamilton v. Hamilton</u>, 138 Hawai'i 185, 209, 378 P.3d 901, 925 (2016). This discretion, moreover, continues after the initial determination of spousal support. HRS § 580-47(a) specifically provides that "<u>[t]he court may order support and maintenance to a party for an indefinite period or until further order of the court</u> . . . ."

19

(Emphasis added.)  Thus, family courts have continuing jurisdiction to address spousal support.

Thus, we agree with Nicoleta that the ICA erred by ruling the family court, on remand, could not exercise its discretion and issue a new just and equitable order for spousal support. We also agree with Nicoleta that, in any event, Jacoby I did not prohibit the family court, on remand, from again considering the HRS § 580-47(a) factors to maintain the $4,000 monthly spousal support award.

"The scope of remand is determined not by formula, but by inference from the opinion as a whole."  In re Haw. Elec. Light Co., 149 Hawai'i 239, 241, 487 P.3d 708, 710 (2021) (cleaned up); see also Chun v. Bd. of Trs. of Emps.' Ret. Sys., 106 Hawai'i 416, 439, 106 P.3d 339, 362 (2005) (stating "(1) that it is the duty of the trial court, on remand, to comply strictly with the mandate of the appellate court according to its true intent and meaning, as determined by the directions given by the reviewing court, and (2) that when acting under an appellate court's mandate, an inferior court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or intermeddle with it, further than to settle so much as has been remanded." (cleaned up)).

With respect to the remand order, in Jacoby I, the ICA ruled:

20

However, as Bennett argues, the Family Court included the entire amount of the Investment Income ($9,064) as part of Bennett's income and none of it as part of Nicoleta's income, even though the Family Court awarded 50% of the Accounts, the underlying assets generating this Investment Income, to Nicoleta. The Family Court clearly erred in this regard and, therefore, utilized erroneous income assumptions for both parties when it determined that Nicoleta was entitled to $4,000 per month in spousal support.

. . . .

The Family Court's findings show that it carefully considered all of the factors provided in HRS § 580-47(a) when it determined that Nicoleta was entitled to spousal support. However, the Family Court abused its discretion in ordering Bennett to pay $4,000 per month in spousal support to Nicoleta based on the erroneous allocation of the Investment Income generated by the parties' Accounts, which were divided equally between them.

134 Hawai'i at 446, 341 P.3d at 1246. The ICA also then

concluded:

The Family Court clearly erred in FOF 114 by attributing the total $9,064 Investment Income to Bennett when it had awarded Nicoleta one-half of the underlying income-generating assets. The Family Court should have attributed to Nicoleta the monthly income generated by her one-half share of these assets when determining her monthly income in FOF 124, and decreased Bennett's monthly income in FOF 125 accordingly.

134 Hawai'i at 447, 341 P.3d at 1247. The ICA affirmed in part

and vacated in part the divorce decree, and indicated it was

remanding to the family court "for further proceeding consistent

with this Opinion." 134 Hawai'i at 458, 341 P.3d at 1258.

As argued by Nicoleta, Jacoby II appears to indicate that

the spousal support under the 2011 divorce decree should have

been $1,705 per month (Nicoleta's reasonable monthly expenses of

$6,237 – investment income of $4,532 = $1,705). If the ICA in

Jacoby I had intended to have the family court so adjust the

21

spousal support amount without further consideration of the factors set forth in HRS § 580-47(a), presumably it would have said so explicitly.[11]  But such a remand order would have been erroneous because, as noted, a family court has continuing discretion under HRS § 580-47(a) to address and adjust the amount of spousal support.  Thus, the family court's discretion continued.

The ICA in Jacoby II set aside the amended spousal support order on the sole basis that the family court was prohibited from doing so based on the remand.  As the family court had continuing jurisdiction to address spousal support in any event, the ICA erred.

**B.**  **The family court abused its discretion by maintaining the $4,000 monthly spousal support award in light of the $4,532 investment income allocation to Nicoleta because, added together, Nicoleta's monthly income exceeded Nicoleta's $6,237 monthly reasonable expenses**

Thus, the ICA erred in setting aside the spousal support order based on its erroneous conclusion of law that the Jacoby I remand order prohibited a reconsideration.  Bennett had not even argued such a basis for setting aside the spousal support amount.  Instead, Bennett had only argued that the family court

---

[11]    The ICA could have done the simple math of adjusting the spousal support to $1,705.  HRS § 580-47(a) still provided the family court with discretion to amend the spousal support award based on a material change in a spouse's physical or financial circumstances or if good cause indicated it was just and equitable to do so.  In this case, for example, more than six years had passed from the November 2009 divorce trial to the February 2016 ruling on remand.  In her July 27, 2015 memorandum on remand, Nicoleta had pointed out circumstances that differed from 2009.

22

abused its discretion and erred as a matter of law in awarding spousal support in an amount that grossly exceeded the family court's calculation of Nicoleta's reasonable needs.

Nicoleta notes that under Hawai'i law, there is no mathematical formula or model to use in calculating spousal support. Nicoleta asserts that even after the family court allocated the $4,532 investment income to her, the family court could have maintained the same $4,000 monthly spousal support based on its reconsideration of the HRS § 580-47(a) factors. Nicoleta points out that if the family court were to adjust the monthly spousal support to $1,705, Bennett could demand that she reimburse him the amount he paid her over and above $1,705 a month for the last ten years.

Although the family court did not err by engaging in a new just and equitable determination on remand, under the circumstances, the family court abused its discretion by arriving at the same $4,000 monthly spousal support award without providing sufficient justification. We have recognized that a family court can abuse its discretion if it orders more spousal support than is required to satisfy the spouse's demonstrated needs. See Gordon v. Gordon, 135 Hawai'i 340, 356, 350 P.3d 1008, 1024 (2015) ("Even if Ira is able to pay the additional amount of alimony, Susan is not entitled to more spousal support than is required to satisfy her demonstrated

23

needs."). So has the ICA. See Cassiday v. Cassiday, 6 Haw. App. 207, 215, 716 P.2d 1145, 1151 (1985), aff'd in part, rev'd in part on other grounds, 68 Haw. 383, 716 P.2d 1133 (1986) ("If there is no need for spousal support, then there is no obligation to pay. Here, since Wife admits that $3,500 per month is sufficient to meet her need, she is not entitled to more than that even if Husband is able to pay more.").

Thus, Bennett's assertion on appeal, that the maintenance of the $4,000 monthly spousal support was an abuse of discretion as it exceeded Nicoleta's demonstrated needs, may have merit. On remand, the family court maintained the $4,000 monthly spousal support award, despite finding that Nicoleta's monthly reasonable expenses were still $6,237. Although the court cited the parties' "large disparity in income[,] a little over $20,300 difference," in its findings of fact, that factor standing alone was insufficient to support its holding. Additional findings were necessary to demonstrate that the judge had appropriately considered the HRS § 580-47(a) factors in deciding the amount to award in spousal support. Thus, based on the record, the family court abused its discretion by awarding more money than Nicoleta's demonstrated needs required.

24

**C.**   **The family court abused its discretion by not holding a hearing on remand to determine whether the spousal support amount should have been adjusted**

The family court did have discretion to order an amended spousal support award on remand.  However, the family court failed to make a finding of any increased spousal support needs in maintaining the $4,000 monthly spousal support amount after the allocation of half of the investment income to Nicoleta.

HRS § 580-47(d) (2006) provides the family court with further discretion to "amend or revise any order" if it determines there is "a material change in the physical or financial circumstances of either party, or upon a showing of other good cause . . . ."  Therefore, a spousal support award is always subject to amendment upon a showing of good cause.  See Amii v. Amii, 5 Haw. App. 385, 391, 695 P.2d 1194, 1198 (1985) ("Spousal support . . . is always subject to revision upon a substantial and material change in the relevant circumstances.").

After the Jacoby I remand, Nicoleta had requested an evidentiary hearing to determine, inter alia, the amount of spousal support, asserting she never received the investment income since the 2011 divorce decree.  In her July 27, 2015 memorandum, Nicoleta asserted she had not been receiving the investment income since the 2011 divorce decree.  Nicoleta contended that this was not a circumstance contemplated by the

family court or the ICA, as the ICA assumed the investment income was divided equally because the assets generating that income were divided equally.

Under the circumstances, the family court abused its discretion by denying Nicoleta's request for an evidentiary hearing. If Nicoleta did not receive her allocation of the investment income from the time of the 2011 divorce decree, Nicoleta showed good cause to have a hearing. Therefore, on remand, the family court should conduct an evidentiary hearing to address the issues discussed herein.

### V. Conclusion

For the foregoing reasons, the ICA's May 24, 2021 judgment on appeal is affirmed in part and vacated in part. We remand this case to the family court for further proceedings consistent with this opinion.

Charles T. Kleintop and
Naoko C. Miyamoto
for petitioner

Michael S. Zola
for respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

